G. H. McSHANE COMPANY, INCORPORATED, a corporation

v.

Warren A. McFADDEN, an Individual, Appellant.

No. 76–1954.

United States Court of Appeals, Third Circuit.

Argued Feb. 23, 1977.

Decided April 26, 1977.

See also 414 F.Supp. 720.

Edmund K. Trent, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellant.

David L. McClenahan, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for appellee.

Before BIGGS, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents two issues. The first is whether an owner of property whose rents were seized pursuant to the Pennsylvania foreign attachment procedures[1] may recover damages when, at the time of the seizure, there may been some doubt concerning the constitutionality of such attachment provisions. The second question, entwined with the first, is whether *Jonnet v. Dollar Savings Bank of City of New York,*[2] which expressly invalidated Pennsylvania's foreign attachment procedures, should be applied retroactively so as to permit damages in this case, an action pending when *Jonnet* was handed down.

Since resolution of these matters is governed by *Kacher v. Pittsburgh National Bank,*[3] only recently decided by this Court, we affirm the judgment of the district court.

### I.

The procedural history of this litigation is extraordinarily knotty. For purposes of this appeal, we shall outline only its most salient aspects.

In October of 1974, plaintiff G. H. McShane Company, a realty concern, brought an action in assumpsit in state court against defendant Warren A. McFadden. McShane initiated the suit by writ of foreign attachment, seizing the rents from property that was situated in Pittsburgh and owned by McFadden.[4] The underlying claim asserted by McShane was for a real estate brokerage commission of $150,000, purportedly due when McFadden purchased the attached property and other real estate.

Although McFadden entered a general appearance in a timely fashion, McShane refused to release the attachments. Thereafter, McFadden denied the indebtedness, and counterclaimed under 42 U.S.C. § 1983 for damages allegedly caused when McShane employed the attachment procedure that McFadden maintains was unconstitutional. McFadden then instituted his own suit in state court in which he sought to enjoin further attachment of the rents, reiterating his constitutional challenge to the foreign attachment mechanism that McShane continued to employ.

Both lawsuits were removed to federal court, where they were consolidated. The district judge dismissed McFadden's suit for injunctive relief and also the counterclaim for damages in the action that had been brought by McShane. In so doing, the trial court relied on two cases decided in this

---

1. Pa.R.Civ.P. 1251–1279.

2. 530 F.2d 1123 (3d Cir. 1976).

3. 545 F.2d 842 (3d Cir. 1976).

4. McShane was able to employ the foreign attachment device because McFadden was a resident of Florida.

Circuit subsequent to *Fuentes v. Shevin*[5] —cases in which the constitutionality of the Pennsylvania foreign attachment statutes had been upheld.[6] McFadden then appealed the dismissal of his injunctive suit,[7] and, in July of 1975, this Court vacated that dismissal. The case was remanded to a three-judge panel of the district court, since the constitutionality of a state-wide foreign attachment rule had been challenged.[8]

Subsequently, in January of 1976, this Court held, in *Jonnet,* that the Pennsylvania foreign attachment arrangement was unconstitutional as a denial of due process. Six days later, on the basis of *Jonnet,* the three-judge district court ruled favorably on McFadden's constitutional claims in his suit for injunctive relief, and further attachment of the rents by McShane was enjoined.

Several weeks following the disposition of the injunction action, the district court, to which McShane's original suit had been removed, determined that McFadden was not liable on McShane's claim for the brokerage commission. At that juncture, McFadden moved to vacate the previous dismissal of his counterclaim for damages under § 1983. However, the trial judge denied such motion on the ground that *Jonnet* should not be applied retroactively. This appeal then ensued.[9]

## II.

McFadden asserts that the district court erred when it dismissed, and then refused to reinstate, his counterclaim for damages under § 1983. He argues, first, that the Pennsylvania foreign attachment procedure employed by McShane had, in effect, been declared unconstitutional two years earlier in *Fuentes,* a landmark decision which forbade prejudgment seizure of a defendant's property without notice or hearing. Alternatively, McFadden contends that, even if it did not strike down the foreign attachment provisions at issue here, *Fuentes* so clearly foreshadowed their demise as to charge McShane with knowledge of their invalidity and of his potential liability in damages for utilizing such a procedure.

In response, McShane contends that, even if *Fuentes* did cast doubt on the constitutionality of the Pennsylvania foreign attachment provisions, it had a right to rely on their continued force until they were expressly annulled by this Court or at least by one of the district courts in this Circuit.

■ Whatever may have been the views of individual members of the present panel regarding *Kacher,* that recent opinion by this Court is controlling on the issue debated by the parties here. In *Kacher,* the holder of a security interest had replevied the secured property in the hands of the debtor after the decision of the Supreme Court in *Sniadach v. Family Finance Corp.,*[10] but before *Fuentes* was handed down. The argument of the debtor in *Kacher* would have required the creditor to predict the result in *Fuentes* on the basis of *Sniadach.* But this Court held in *Kacher* that parties are justified in relying on state procedures until such procedures are specifically overturned, even though a Supreme Court decision may have rendered their vitality questionable. To do otherwise, the *Kacher* Court indicated, would " 'work an injustice upon those . . . who acted

---

**5.** 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

**6.** *Lebowitz v. Forbes Leasing & Finance Corp.,* 456 F.2d 979 (3d Cir. 1972), *cert. denied,* 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82, *rehearing denied,* 409 U.S. 1049, 93 S.Ct. 509, 34 L.Ed.2d 502 (1972); *Balter v. Bato Co., Inc.,* 385 F.Supp. 420 (W.D.Pa.1974).

**7.** No appeal could be taken, at that time, from the dismissal of the counterclaim for damages, since no final order had been entered by the district court. *See* Fed.R.Civ.P. 54(b).

**8.** Shortly after the remand, it should be noted, the mortgage on the subject property was foreclosed because the attachment of the rents had precluded McFadden from using such monies to meet his obligations under the mortgage.

**9.** The jurisdiction of this Court over the present appeal is grounded on 28 U.S.C. § 1291.

**10.** 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

in accordance with a time honored and court tested proceeding.' " [11]

### III.

McFadden tenders a second justification for a recovery of damages under § 1983 for McShane's use of the statutory attachment procedures. He maintains that the appeal in his injunctive suit may have induced this Court to hold as it did in *Jonnet,* and that he thus should be awarded, in his damage counterclaim in McShane's action, the fruits of his successful challenge. In essence, McFadden insists that he is entitled to a retroactive application of *Jonnet.*

It is clear that the constitutional question regarding the foreign attachment provision was adjudicated by this Court in *Jonnet.* And the three-judge court properly bestowed the benefits of *Jonnet* on McFadden when it enjoined the prospective attachment of his rents. Yet it does not follow that McFadden should prevail in his request that *Jonnet* be applied retroactively to attachments made before that decision was rendered—specifically, to secure monetary damages from a potential creditor, who acted under a presumptively constitutional statutory scheme. Presented with a parallel situation in *Kacher,* this Court ruled that § 1983 does not establish a right to recover damages from an individual who followed a statutory scheme that had not yet been held unconstitutional when so utilized.[12]

It should be noted that *Kacher* suggested that the damage issue could be viewed in terms of the analogous common law tort of malicious prosecution. This Court declared that, under the facts as they existed in *Kacher,* the plaintiff would have to allege and prove wrongful motive on the part of the creditor in order to hold him answerable in damages. While there are some indications that McFadden may be able to make out a case on the question of motive, like the Court in *Kacher,* we do not reach that

question, since that issue is not before us, not having been raised in the pleadings.

The judgment of the district court will be affirmed.

---

11. 545 F.2d at 846.

12. In so doing, the *Kacher* Court relied, in large part, on opinions of the Second and Tenth

Circuits that had reached a similar conclusion. *Tucker v. Maher,* 497 F.2d 1309 (2d Cir. 1974); *Rios v. Cessna Finance Corp.,* 488 F.2d 25 (10th Cir. 1973).