Giles M. LUGAR, Appellant,

v.

EDMONDSON OIL COMPANY, INC.;
Ronald L. Barbour, Appellees.

No. 78–1717.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1980.

Decided Jan. 9, 1981.

**1060**

Robert L. Morrison, Jr., Danville, Va., for appellant.

H. Victor Millner, Jr., Chatham, Va. (Vansant, Millner & Vines, Chatham, Va., on brief), and Jackson L. Kiser, Martinsville, Va. (Young, Kiser, Haskins, Mann, Gregory & Young, Ltd., Martinsville, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER, BUTZNER, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges, sitting en banc.

JAMES DICKSON PHILLIPS, Circuit Judge:

■ Giles M. Lugar appeals the dismissal of his 42 U.S.C. § 1983 action in which he had alleged that the defendants as private party debt claimants in a state court action had maliciously invoked against him state prejudgment attachment procedures which resulted in the seizure of his property under a levy that was later set aside in the state proceeding because not supported on the facts shown. Claiming that the seizure by levy—whether as authorized by the state attachment statute or as erroneously carried out by state officials [1]—had deprived him of property without due process of law, he sought monetary relief against the state debt claimants.

The issue presented is whether the debt claimants' conduct as alleged constituted private action "under color of state law" within contemplation of § 1983. The district court held, relying essentially upon *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), that the complaint did not allege a deprivation of property by "state action," and accordingly dismissed the action for failure of the

---

1. There has been considerable confusion throughout the litigation on the question whether Lugar's ultimate claim of unconstitutional deprivation was directed at the Virginia statute itself or only at its erroneous application to him. The confusion first arose when, opposing the § 1983 defendants' motion that the district court abstain to allow state court interpretation of the statute, Lugar suggested somewhat ambivalently that he might not be challenging the statute's constitutionality, so that state court interpretation was not needed. After the motion to abstain was denied, this ambivalence persisted both in the district court and on appeal to this court. The district judge remarked upon it in his memorandum order dismissing the action, and observed in passing—since it had no bearing upon his basis for decision—that whatever Lugar's protestations in opposing the motion to abstain, his continued reliance upon the Supreme Court's creditor remedy decisions beginning with *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), unmistakably involved a challenge to the statute itself. We completely agree with this assessment. *See Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1325 (10th Cir. 1978).

As will appear, it has not been necessary in our disposition of the appeal to address the question whether the property seizure was constitutionally invalid on either ground. We therefore note this confusion only to observe that had the challenge been limited to a claim of unconstitutional application of the statute in the course of the state attachment proceeding, we would have had a clear alternative basis for affirmance of the dismissal. It is well settled that no cause of action lies under § 1983 to redress deprivations of procedural due process occurring during state court litigation between private parties. *See, e. g., Girard v. 94th St. & Fifth Ave., Corp.*, 530 F.2d 66 (2d Cir. 1976); *Henry v. First Nat'l Bank of Clarksdale*, 444 F.2d 1300 (5th Cir. 1971); *Bottone v. Lindsley*, 170 F.2d 705 (10th Cir. 1948). *But see, Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1 (1st Cir. 1976). Because, with the district court, we construe Lugar's claim to include a constitutional challenge to the statute itself, the lack of merit in the challenge to the statute's procedural application would not be dispositive of his claim. We, of course, express no view upon the constitutionality of the statute in view of our disposition upon other grounds.

complaint to allege a claim cognizable under § 1983. Though we do not find *Flagg Brothers* dispositive as did the district court, we affirm dismissal of the action on the basis that the defendants' conduct as alleged did not constitute private action under color of state law.

## I

In the spring of 1977, Lugar was operating a truck stop in Pittsylvania County, Virginia, and was then indebted to the defendant Edmondson Oil Co., Inc. (Edmondson). Edmondson commenced a civil action to recover on the debt in a Virginia state court, and ancillary to that action petitioned pursuant to state law[2] for prejudgment attachment of certain of Lugar's property to prevent its dissipation as a judgment satisfaction source. The petition, as verified under oath by the defendant Ronald L. Barbour, Edmondson's president and sole stockholder, alleged in conclusory terms a belief that Lugar was disposing of or might dispose of his property in order to defeat his creditors and prayed that certain identified property be attached to prevent his doing so. Acting upon the ex parte petition, a clerk of the state court in which the principal action was pending issued a writ of attachment, which was then executed in due course by the county sheriff, who levied upon certain of Lugar's property, effectively sequestering it though it was left in Lugar's possession. No preattachment bond was required by state law as a condition to securing the attachment, and none was provided, but Edmondson did later post a bond as required by law after Lugar filed an affidavit of substantial defense some days after the levy. Pursuant to statute, a hearing on the propriety of the attachment and levy was later conducted by a state trial judge who then, some thirty-four days after the levy, ordered the attachment dismissed on the basis that Edmondson had failed to carry the burden imposed by state law to establish by evidence the grounds for attachment alleged in the petition. At this point the petition for attachment was retained on the state court docket and the principal action proceded to the entry of judgment on the debt in favor of Edmondson. Some of Lugar's property was then sold in execution of the judgment.

Lugar then brought this § 1983 action against Edmondson and Barbour, alleging in greater detail the essential facts above summarized as to the course of the state court proceedings; that Edmondson's and Barbour's actions were maliciously inspired; that the attachment of his property was by virtue of official state action in which Edmondson and Barbour had willingly participated; that this resulted in a deprivation of his property without due process of law; and that in consequence he sustained specifically identified financial loss for which he was entitled to compensatory and punitive damages.[3] As earlier indicated, the district court concluded that the complaint failed to state a claim upon which relief could be granted under § 1983, essentially on the basis that *Flagg Brothers* compelled the conclusion that the private actions of the defendants as alleged did not constitute state action.[4] This appeal followed.

## II

Against this background, we begin analysis by restating, in slightly recast form, the dispositive issue as we perceive it. It is whether the mere institution by a private

---

**2.** The attachment procedure invoked was that now provided by Va.Code §§ 8.01–533 *et seq.* The ensuing proceedings, as summarized in this opinion, were all carried out in conformity with the prescribed procedure.

**3.** The complaint alleged two generally comparable federal claims under 42 U.S.C. § 1983, and a pendent state claim for malicious prosecution.

**4.** The dismissal was entered *sua sponte*, without prejudice, citing Fed.R.Civ.P. 12(h)(2), upon consideration of the defendants' motion to abstain and the plaintiff's response. Though the plaintiff unsuccessfully sought reconsideration of this order in the district court because of the irregularity of the *sua sponte* dismissal, he has not assigned this as error on appeal, and as appellant, he has freely joined issue on the merits of the dismissal for failure to state a claim for relief.

litigant[5] of presumptively valid state judicial proceedings, without any prior or subsequent collusion or concerted action by that litigant with the state officials who then proceed with adjudicative, administrative, or executive enforcement of the proceedings, constitutes action under color of state law within contemplation of § 1983.

Because this formulation of the issue both anticipates and reflects major points in our analysis, we emphasize those of its elements most critical to that analysis. First, it deliberately focuses inquiry upon whether the specific conduct directly chargeable to the § 1983 defendants was taken under color of state law, rather than upon whether the ultimate deprivation of right charged can be attributed to state action. Next, it emphasizes that the conduct directly chargeable to the § 1983 defendants is narrowly that of invoking, as private litigants, state judicial proceedings for the adjudication of a private controversy, and includes no earlier or later involvement of the § 1983 defendants with state officials other than as private litigants in those proceedings. Finally it emphasizes that the ordering principle being sought is one generally applicable to the noncollusive invocation by private litigants of any state judicial proceeding, and is not limited to the particular type here in issue—ancillary proceedings

for seizure of property for the benefit of creditors.

As suggested in this formulation and discussion of the dispositive issue, we think that its resolution requires, in the first place, careful attention to and refinement of a fundamental distinction between the closely related, frequently congruent, concepts of state action and action under color of state law in § 1983 doctrine. To say why requires a brief preliminary analysis of the way in which evolving § 1983 doctrine may have tended to blur or to finesse the distinction, followed by a discussion of the importance of the distinction in making proper application of § 1983 doctrine to private defendants in the particular litigation context of this case.

It has become a commonplace that in the typical § 1983 case involving a claim of deprivation of a constitutionally secured right, the state action requirement necessitated by the Fourteenth Amendment's undergirding,[6] and the under color of state law requirement necessitated by the statutory language[7] ordinarily come to the same thing.[8] Nevertheless there has been occasional recognition that this is not always so—that the two are separate, not necessarily congruent, but cumulative predicate elements of a prima facie § 1983 claim.[9] The

---

5. We will refer throughout to the two § 1983 defendants, Edmondson Oil Company and its President Barbour, as state court litigants, though only the corporation was a nominal plaintiff. Lugar's claim against Barbour treats him as the corporate defendant's alter ego.

6. Though the Amendment nowhere uses the term state action, its basic commands that "no State shall make or enforce any law . . . nor . . . deprive . . . nor deny [rights]," has long since been transmuted in common usage into this shorthand form, which remains firmly fixed in the doctrinal lexicon because of the inescapable fact that the prohibition is addressed only to the "State," even if it be conceded that the prohibited conduct of "making, enforcing, depriving, or denying" might well admit the notion of "inaction" as well as of "action." *See generally* Glennon & Nowak, *A Functional Analysis of the Fourteenth Amendment "State Action" Requirement*, 1976 S.Ct. Rev. 221, 228–32.

7. Again, the term is a shorthand formulation in which "law" does service for a more complex definition of the sources of state authority in 42 U.S.C. § 1983. The reference there is to a "person who, under color of any statute, ordinance, regulation, custom or usage of any State . . . ."

8. The cases are legion reciting that the two terms mean the same thing. *See, e. g., United States v. Price*, 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 1157 n.7, 16 L.Ed.2d 267 (1966); *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 642 n.6 (4th Cir. 1975); *Gibbs v. Titelman*, 502 F.2d 1107, 1110 (3d Cir. 1974); *Shirley v. State Nat'l Bank of Conn.*, 493 F.2d 739, 741 (2d Cir. 1974); *Adams v. Southern Cal. First Nat'l Bank*, 492 F.2d 324, 329 (9th Cir. 1973).

9. *See, e. g., Flagg Brothers*, 436 U.S. at 156, 98 S.Ct. at 1733 (majority); *id.* at 177 n.14, 98 S.Ct. at 1744 n.14 (Stevens, J., dissenting); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1969) (majori-

reason for all this emerges upon consideration of the way in which the two requirements are confronted in the three basic patterns into which § 1983 litigation has tended to fall.[10]

In the first pattern—the so called "official act" case which makes up the bulk of § 1983 litigation—the specific conduct alleged to have deprived of secured right is indubitably only official action,[11] i. e., that alone of state officials acting officially in legislative, e. g., Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); judicial, e. g., Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); or executive enforcement, e. g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (police officers) roles. In such cases the only possible state action is that of the state officials charged, and the only possibly disputable question [12] is whether those officials were acting under color of state law in doing the act charged. Where dispute has arisen on the latter issue, its resolution has necessarily resolved any further question whether the resulting deprivation of right was by

virtue of state action. See Flagg Brothers, 436 U.S. at 157 & n.5, 98 S.Ct. at 1734 & n.5. Because in most official act cases decided since Monroe v. Pape there is no disputing that the specific conduct charged to officials was done "under color," there has not been any great need arising from these cases to refine the distinction. In these cases, that is to say, the state action question is subsumed in the under color of question, and the latter is seldom raised.

In the second pattern, private actors alone are alleged to have engaged, at what could be called the operational or enforcement level, in conduct that deprived of a secured right. At this level, no state official is involved. If state action is found to exist it is because the private action at the level where deprivation actually occurs is "attributable to the state" by virtue of decisions taken, or policy established, or legislation enacted at higher levels. "Attribution" of this kind of private action to the state may be tested under any of several theories: practical compulsion by the state, e. g., Adickes, 398 U.S. at 170–71, 90 S.Ct.

ty); id. at 189–90, 210–12, 90 S.Ct. at 1619–1620, 1630–1631 (Brennan, J., concurring and dissenting); Dieffenbach v. Attorney Gen. of Vt., 604 F.2d 187, 193 n.10 (2d Cir. 1979); Lavoie v. Bigwood, 457 F.2d 7, 15 (1st Cir. 1972).

10. The state action requirement is encountered, of course, in various contexts other than § 1983 litigation. Closely related to the § 1983 litigation context are those cases wherein a state litigant directly challenges the constitutionality under the Fourteenth Amendment of a state statute in order to be relieved of its legal effect. In most such cases—and Sniadach, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, and its progeny are most apposite to the § 1983 litigation before us—the existence of state action is manifest in the very fact that state officials are directly charged with and obviously engaged in enforcement of the statute, see Flagg Brothers, 436 U.S. at 157, 98 S.Ct. at 1734, or, as some would see it, in the more fundamental fact that the statute has been enacted by the state legislature, see id. at 172–76, 98 S.Ct. at 1741–1744 (Stevens, J., dissenting). In consequence, in these cases, state action is ordinarily simply assumed without discussion and because there is no under color of state law requirement even potentially in play, these cases have provided no occasion for developing the distinction.

Even more closely related to the § 1983 action are those wherein companion civil rights statutes such as 18 U.S.C. § 242 are invoked to prosecute for violations of constitutionally secured rights. In such cases dual state action and under color of state law requirements comparable to those grounded in § 1983 do exist, but the tendency has been to consider them by reference to § 1983 decisions. see, e.g., Price, 383 U.S. at 794 n.7, 86 S.Ct., at 1157 n. 7. Consequently, they also have not provided any separate sources for refining the distinction.

11. Of course there may be dispute on the preliminary question whether particular § 1983 defendants should be deemed agents of the state so that their actions are indubitably state action. See, e. g., Hall v. Quillen, 631 F.2d 1154 (4th Cir. 1980) (conduct of court-appointed physician and counsel in civil commitment proceeding not state action).

12. That is, disputable in respect of the issues whether state action is involved and whether the defendants acted under color of state law. Of course there may be other disputable questions going to whether the right assertedly violated is one entitled by content to constitutional protection, e. g., Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

at 1615–1616 (compulsion of custom; under "substantive count"); a "symbiotic relationship" between private actor and the state, e. g., *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (insufficient for state action); or delegation or abdication to the private actor of an exclusive sovereign function, e. g., *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (no state action; function not exclusively sovereign); *Flagg Brothers*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (same).

This pattern also does not force separate consideration of the two predicates of state action and action under color. The reason is plain. Addressing the attribution issue first—as is appropriate—in effect converts this pattern conceptually into an official-act case once the threshold question is resolved. If state action is found by attribution, the private actor has been found in effect a *de facto* agent of the state, and the under color of question has been merged in the state action inquiry just as it is in official-act cases. *See, e. g., Adickes*, 398 U.S. at 170–71, 90 S.Ct. at 1615–1616 (private action attributed to state because of practical compulsion; action under color of state law assumed without discussion). By like token, if state action is not found by attribution, there is no need to address the under color of state law requirement because the two are cumulative and the claim has already failed. *See, e. g., Flagg Brothers*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185; *Moose Lodge*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627; *Jackson*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477.

■ Only the third pattern—into which the instant case falls—may make necessary separate consideration of the two requirements. It does so whenever state action is first found to exist. In this pattern the conduct of a private actor defendant is alleged to have combined with the acts of state officials at the enforcement or opera-

tional level to cause deprivation of a secured right. In this situation, as observed by the Supreme Court, the "involvement of a state official ... provides the state action...,"[13] *Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605 (conspiracy count); but it does not resolve nor even touch upon the further question whether the private defendant's contributing conduct was taken under color of state law, *see id.* That remains for separate resolution, and to that problem we now turn, since as indicated, we consider it the dispositive issue in this case.

As a moment's reflection will show, in this pattern the state action requirement can differ from the under color of state law requirement only if the two are referable to different conduct. This is the key to the distinction that is critical to correct application of § 1983 doctrine to this particular fact pattern. We think that the different objects of reference are readily identified by considering the twin, separate concerns reflected in these two predicate elements of the § 1983 cause of action.

■ Reflecting the ultimate concern that "it is the *state*'s conduct, whether action or inaction, not the *private* conduct, that gives rise to constitutional attack," Friendly, *The Dartmouth College Case and the Public-Private Penumbra*, 12 Tex.Q. 17 (No. 2 1969 Supp.) the state action requirement is properly referred to the totality of conduct—public and private—that is alleged to have combined in causing the deprivation of right. If state involvement, whether at the enforcement or more remote levels, is a significant contributing factor in this totality, the state action requirement can be found met.

■ Reflecting, on the other hand, the unmistakable concern expressed in 42 U.S.C. § 1983 to give added protection to federally secured rights by providing a private tort-like cause of action against particular violators, the under color of state law

**13.** It should be observed that, as in *Adickes* itself, the official involvement need not be that of a named § 1983 defendant. In *Adickes* there was only a single defendant, the private busi-

ness entity. The state official with whom the conspiracy was alleged was not joined as a defendant.

*See also* note 16 *infra*.

requirement is properly referred to the specific conduct directly charged to particular defendants. Analyzed in this way, it is plain that to find state action "provided" in this pattern by the "involvement" of state officials in the totality of conduct that resulted in a deprivation of secured right does not decide, nor even address, the separate question whether the private conduct of a particular defendant which was also involved to some extent was under color of state law.[14]

■ This then leads to the question of the appropriate test for determining in this particular pattern of litigation whether private actor conduct has that quality. On this question our most authoritative guidance from the Supreme Court is found in *Adickes*, where the issue was directly confronted. There, in considering a claim that the private party defendant had conspired with state officials to deprive the claimant of constitutional rights by preventing interracial association,[15] the Court posited two elements. First, at the very least, the private actor defendant must have acted "with

the knowledge of and pursuant to" the state law in question, 398 U.S. at 161 n.23, 90 S.Ct. at 1611 n.23. Next, and more critically, he must have been "*jointly* engaged with state officials," or, put alternatively, "a willful participant in *joint* activity with the State or its agents." *Id.* at 152, 90 S.Ct. at 1606 (quoting *Price*, 383 U.S. at 794 n.7, 86 S.Ct. at 1157 n.7) (emphases added).

Taking this as the appropriate analytical framework for the litigation pattern into which the instant case falls, and its separate tests of state action and action under color of state law as the proper ones for application to that pattern, we turn now to their application to the claim sought to be stated by Lugar.

### III

A convenient beginning point for the concluding, application stage of our analysis is to consider the Supreme Court's decision in *Flagg Brothers* which, as indicated, the district court felt was directly dispositive of this case. For reasons that will appear, we

---

14. This analysis emphasizes the clear relationship between this particular pattern of § 1983 litigation and that larger pattern of general tort litigation in which a claimant has suffered injury by reason of the separate actions of more than one person which allegedly have concurred to produce an indivisible injury. *See generally* Restatement (Second) of Torts, §§ 875–882 (1977). Viewing this § 1983 pattern in that larger pattern confirms the validity of the separate reference point analysis. In that general pattern, as here, a claimant is under no compulsion to join all potentially liable defendants in a single action; may establish joint and several liability for indivisible injury against all defendants whose conduct can be shown to have concurred in causing the ultimate injury; but is subject to all independent as well as common defenses available to any defendant sued. *Id.* Set in this more general context, the state action requirement, concerned as it is with the nature of the protected interest and the injury to that interest, is properly referred to the totality of the conduct leading to the indivisible injury; whereas the under color of state law requirement, concerned as it is with a special attribute of the specific conduct charged to particular tortfeasor defendants, is properly referred to that specific conduct. So viewed, the lack of an under color of state law quality in a § 1983 defendant's conduct is of a piece with other independent

grounds upon which liability may be escaped by such a defendant even though state action clearly exists in respect of the ultimate deprivation of right charged. *See, e. g., Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975) (official immunity); *Hall v. Tawney*, 621 F.2d 607, 615 (4th Cir. 1980) (only indirect involvement; no vicarious liability).

This analysis may also serve, incidentally, to suggest the rightful limits of an "actor-focussed" approach to state action problems in § 1983 litigation, an object of recurring scholarly criticism. *See, e. g.,* Glennon & Nowak, *supra* note 6, at 226. *See generally* L. Tribe, *American Constitutional Law* 1147–74 (1978).

15. The *Adickes* claim was based upon two counts, one of which was the conspiracy count. The other count alleged a direct deprivation of the right by the private defendant's conduct in enforcing state racial segregation custom. This latter count was analyzed by inquiring whether the private conduct, considered alone, was attributable to the state because of the practical compulsion of state custom. In line with our analysis here, once state action by attribution was found in *Adickes*, the under color of state law requirement as to this count was apparently assumed without discussion. 398 U.S. at 169–71, 90 S.Ct. at 1614–1616.

do not agree with this view of *Flagg Brothers'* ultimate implications, though its general importance to decision here is clear. In the course of showing why, we think that the validity of the analytical approach we adopt will be made more plain and that its application to the facts alleged in this case will also be shown completely compatible with the application of *Flagg Brothers'* test of state action to the facts in that case.

*Flagg Brothers* addressed the question whether a private warehouseman's sale of stored goods as permitted under a state statute would expose the warehouseman to possible § 1983 liability to the property owner for deprivation of property without due process of law. The statute, New York's version of U.C.C. § 7–210, gave the warehouseman a lien for unpaid storage charges and allowed him, upon *ex parte* notice to the owner, to sell the property at private sale in execution of the lien. Neither levy nor seizure by state officials nor judicial proceedings of any sort either before or after the sale were required.

After positing the dual requirements that a § 1983 defendant's conduct must be both taken under color of state law and attributable to state action, 436 U.S. at 156, 98 S.Ct. at 1733, the *Flagg Brothers* Court found the claim deficient on the second: state action had not been shown. The possibility of state action was analyzed under two basic theories earlier noted in this opinion: (1) that the warehouseman's private conduct might be attributed to the state because it was authorized by statute, or because it involved the exercise of a function lying within the exclusive prerogative of the state; and (2) that state action might be provided, as in *Adickes*, by "overt official involvement" at the operational level. Both were rejected by the Court. The function exercised—self-help sale in execution of a lien—was not an exclusive func-

tion of state sovereignty, and the mere authorization of the procedure by state legislative enactment did not itself supply the state action element. *Id.* at 157–66, 98 S.Ct. at 1733–1739. Neither could state action be found on the basis that state officials were engaged with the private defendant in directly depriving the § 1983 claimant of property. On the contrary, said the Court, the § 1983 claimants had "named no public officials as defendants" in the § 1983 action[16] and there was no "overt official involvement" in the challenged taking of the property by sale. *Id.* at 157, 98 S.Ct. at 1734. This latter point sufficed to distinguish the case, said the Court, from those creditor remedy cases such as *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and *Sniadach,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, wherein state action was manifest in the direct enforcement of the creditor remedies by state officials. Having found the state action element wanting in the claimant's statement of claim, the Court was not required to address the separate under color of state law element.

■ As noted, the district court in this case thought *Flagg Brothers* dispositive against Lugar's § 1983 claim. As the district court saw it, if the warehouseman's self-help conduct in *Flagg Brothers* could not be attributed to the state, then that of the debt claimants in the instant case clearly could not be. The New York warehouseman's action was "even more extreme" than the "lesser actions" by the private debt claimants who in the Virginia proceeding had "merely filed a petition for attachment." Further, said the district court, *Flagg Brothers'* rejection of the contention that New York's enactment of the warehouseman's self-help statute itself consti-

---

**16.** With all deference, we suggest that this particular point is properly treated as dictum in view of the clear implication from cases such as *Adickes* (see note 13 *supra* ), *Moose Lodge,* and *Jackson*—where no significance was attached to the non-joinder of public officials— that this factor has no controlling relevance to the state action issue. The critical point in *Flagg Brothers* is that there was no "overt official involvement" in the ultimate deprivation charged, not that state officials who might have been joined as defendants were not. *But see Flagg Brothers,* 436 U.S. at 173–74, 98 S.Ct. at 1742–1743 (Stevens, J., dissenting).

tuted "authorizing" state action was dispositive against any similar contention with respect to Virginia's enactment of the statute invoked by the § 1983 defendants here.[17] Finally, to the district court it was also "significant that [Lugar] had not named any public officials as defendants," a factor also noted by the *Flagg Brothers* court as militating against a finding of state action.[18] *Lugar v. Edmondson Oil Co.,* No. 78–0020(D) (W.D.Va. July 14, 1978).

We agree with the district court's perception of *Flagg Brothers'* significance for the instant case so far as it concerns finding state action not present under an authorized-by-state-law or exclusive-state-function theory of attribution. If those theories would not support a state action holding for the private warehouseman's self-help conduct in *Flagg Brothers*, they would not support it for the "lesser" conduct of the defendants who in the instant case had simply instituted state judicial procedures which were then conducted under control and supervision of state officials.[19]

The district court failed, however, to take into account the basis upon which the *Flagg Brothers* Court rejected the alternative theory of state action, *i. e.,* involvement of official conduct with private conduct in the actual deprivation of right charged—the taking of the § 1983 claimant's property.[20] As to that, the *Flagg Brothers* Court made a critical distinction between the facts before it and those presented in cases of the type before us. Under the New York self-help procedure, as authorized, there was no "overt official involvement" in the challenged taking, while under the judicial creditor remedy procedures challenged in the *Sniadach* line of cases, "overt official involvement" in the taking of property was palpable. As the *Flagg Brothers* Court flatly put it, "[t]his total absence of overt official involvement plainly distinguishes this case from earlier decisions imposing procedural restrictions on creditors' remedies such as ... *Sniadach* ...." 436 U.S. at 157, 98 S.Ct. at 1734.

The instant case obviously cannot be similarly distinguished on this theory of state action from those earlier decisions involving judicial creditor remedies. If the challenged takings in those cases sufficiently involved state action, then so must the challenged taking through the overt involvement of the state officials—clerk of court and sheriff[21]—in the Virginia attachment proceedings here in question.

█ To hold as we do, however, that in this case—unlike *Flagg Brothers*, but like *Sniadach* and its progeny—there is state action in the ultimate taking of property charged as a deprivation of constitutionally secured right, does not address the question whether the specific action charged to the private defendants as a contributing cause

**17.** It might conceivably be contended that in cases of this type the state action and under color of state law requirements are properly referred to the state laws providing general access to the courts rather than to the state law authorizing the particular judicial procedure invoked by the § 1983 defendant. This possibility has been expressly rejected. *See Henry,* 444 F.2d 1300. We agree with the rejection.

**18.** *See* note 16 *supra.*

**19.** *Cf. Flagg Brothers,* 436 U.S. at 170–73, 98 S.Ct. at 1740–1742 (Stevens, J., dissenting: state action supportable on either theory, particularly exclusive-state-function).

**20.** The district court noted the distinction made on this point by the *Flagg Brothers* Court without comment beyond reference to the fact that, as in *Flagg Brothers*, no official was joined as defendant in the instant case.

**21.** Justice Stevens, dissenting in *Flagg Brothers*, disagreed with the majority's perception that it was the involvement of comparable state officials in conducting and enforcing the creditors' remedies in the *Sniadach* line of cases that provided the state action requisite for constitutional attack. He suggested that this sort of official involvement was rightly viewed as that of "minor governmental functionaries" acting ministerially, a type of official-act which has not, in his view, been thought to constitute state action for § 1983 purposes. 436 U.S. at 173–74, 98 S.Ct. at 1742–1743. *See also Torres,* 588 F.2d at 1327 (mere reading of restraining order by deputy sheriff not state action). We are, of course, bound on this by the contrary view clearly expressed in the majority opinion in *Flagg Brothers*.

of that deprivation was taken under color of state law. As previously noted, that separate question was not reached in *Flagg* nor was it even potentially in issue in the *Sniadach* line of cases.[22]

Within the analytical framework earlier established, this question is properly referred only to the specific conduct chargeable to these defendants—their invocation of and participation as litigants in the judicial proceedings which resulted in the challenged seizure of Lugar's property. As suggested, this question is properly decided by applying the test of private action laid down in *Adickes*: whether the private actors by this conduct can be said to have engaged or participated jointly with those state officials whose overt involvement supplied the state action element of Lugar's § 1983 claim.

*Adickes* did not further define the concept of "joint participation," but some examples have emerged from the relatively few cases confronting the issue. *Adickes* itself found it present on the facts of that case in a conspiratorial undertaking between private property owner and state law enforcement officials to enforce state segregation law or custom against a § 1983 claimant. 398 U.S. at 153–57, 90 S.Ct. at 1606–1608.

Another example of "conspiratorial" conduct between private person and state officials held sufficient to expose the private actor to § 1983 liability is provided in *Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979). There the § 1983 plaintiff alleged that officers of a bank to whom the plaintiff was indebted arranged with a police officer to have the plaintiff arrested for an unrelated misdemeanor and held in custody until a bank officer could arrive to pressure her to pay her bank debt. The Tenth Circuit held these allegations of joint participation of private party with state officials sufficient to state a § 1983 claim against the former.

A final example—and the most instructive and compelling for our purposes—has recently been provided by the Supreme Court's decision in *Dennis v. Sparks*, —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). *Dennis* affirmed the Fifth Circuit's en banc decision, 604 F.2d 976 (1979), holding that (1) under *Adickes*, private state court litigants who by conspiracy with a state judge had induced the latter to issue an injunction which deprived their adversary of property had thereby acted "under color of state law" for § 1983 purposes, and (2) were not entitled derivatively to the absolute immunity defense available to their judicial officer co-conspirator. Reviewing the decision to resolve a circuit conflict on the derivative immunity issue, the Court observed preliminarily that the court of appeals had "correctly understood our cases," citing *Adickes*, in holding that the § 1983 private defendants had acted under color of state law by virtue of their joint engagement with state officials in the challenged action. —— U.S. at ——, 101 S.Ct. at 186. By way of contrast, the Court then noted, in a dictum of special significance to our analysis, that "[o]f course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or joint actor with the judge."[23]

---

22. In *Fuentes*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the lone § 1983 case in the line, the question might theoretically have been presented as one distinct from the state action question, in line with our analysis of § 1983 litigation patterns. In the event, however, it was not presented because of the way the litigation ran its course. In the district court, the § 1983 claimants had joined as defendants both the private person who as creditor had invoked the challenged creditor remedy and the state officials charged with enforcement, but sought against them only injunctive and declaratory relief. 317 F.Supp. 954 (S.D.Fla.1970) (three-judge court). Probably because in this posture the private party defendant was merely a nominal party to the action for injunctive relief against future enforcement of state procedures, the question was simply moot.

23. The dissent would apparently dismiss the significance of this dictum by finding in ancillary creditor remedy proceedings of the type here involved a special quality not possessed by the type of state judicial proceedings involved in *Dennis*. With all respect, we think that nothing in the apposite authorities supports such a view. As indicated earlier in this

Whatever these authorities may imply by way of general principle for the infinite variety of situations involving related private and official conduct that are possible in § 1983 litigation, we think they suffice to supply a principle for resolving the question as we confront it. In the setting we consider, "joint engagement or participation" of private actor with state official implies such a usurpation or corruption of official power by the former or surrender of power by the latter that the independence of the enforcing official has been compromised to a significant degree and the official powers have become in practical effect shared by the two. Judged by this test it is plain that merely invoking a state's judicial process and thereafter participating in it solely as private litigant does not constitute joint engagement or partici-

pation by the private litigant with the state officials who then independently conduct and enforce that process.[24] The private initiating act, and the official enforcement acts are in no realistic sense joint but are instead discontinuous and independent. In this context the "essential dichotomy," *Jackson*, 419 U.S. at 349, 95 S.Ct. at 452, between private and public acts seems to us precisely defined at the point where a private litigant, having invoked the state's process, thereupon submits his interests along with those of his adversary to the neutral administration of the process by state officials having that responsibility.

Accordingly, we hold that a complaint alleging only this conduct fails to allege that the defendants acted under color of state law.[25] On this basis, the action was

opinion, the Supreme Court creditor remedy cases have simply not presented the under color of state law issue. *See* text at note 22 *supra.* Furthermore, as earlier observed, the *Flagg Brothers* Court's ascription of a special quality to those cases was in respect of the existence of state action through "overt official involvement" at the enforcement level in contrast to the private self-help remedy involved in *Flagg Brothers. Flagg Brothers* recognized in them no special quality in respect of the under color of state law requirement. Finally, it should be noted that the judicial injunction in *Dennis* and the judicial attachment in the instant case came in the end to the same thing for § 1983 purposes: an alleged unconstitutional deprivation of property. *See Torres*, 588 F.2d at 1325 (similarity between interlocutory injunctive and sequestration remedies noted). Certainly *Dennis* itself implied no such distinction.

24. The legal deficiency in the under color of state law element in Lugar's statement of claim is not overcome by his allegation that the defendants' institution and prosecution of the state proceeding was malicious. However motivated, the critical point is that the private conduct was independent of, not joint with, the ensuing official conduct of the proceeding. Motive might have some relevance in establishing a qualified immunity defense based upon good faith; but that, of course, is not before us in assessing the sufficiency of the statement of claim. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). *See also District 28 v. Wellmore Coal Corp.*, 609 F.2d 1083 (4th Cir. 1979).

25. This Circuit has twice before considered the general question we decide here—whether the mere invocation by a private litigant of state

judicial proceedings may expose that litigant to liability under § 1983 for any deprivation of federally secured rights that result. In each of those earlier cases, *Wellmore*, 609 F.2d 1083, and *Wilkins v. Rogers*, 581 F.2d 399 (4th Cir. 1978), a panel of this court found no cognizable § 1983 claim stated against the private state court litigant. In *Wilkins*, the § 1983 defendant had sued his wife in state court to resolve a title dispute. In *Wellmore*, the § 1983 defendants had sued for and obtained state court injunctions against picketing by the § 1983 plaintiffs.

While we consider those earlier decisions sound in result, and our decision here completely consistent with them, we have not thought it possible to rely solely upon them as controlling precedent for the result we reach here. In order to put the three decisions in perspective, we think it important to say why.

In *Wilkins*, as the *Wellmore* panel noted, the court simply stated, without analysis, that the state court litigant had "not acted with the requisite degree of state action...." 581 F.2d at 405. No extended analysis was warranted because of the clear lack of any merit to the claim, most obviously because it alleged nothing more than a deprivation of procedural due process in the course of private party litigation in a state court. *See* note 1 *supra.*

In *Wellmore*, a more extended analysis was undertaken, but in its course the court explicitly treated the state action and under color of state law questions as "equivalent," 609 F.2d at 1085 & n.2, and in consequence did not analyze them separately as we have found it necessary to do here. The necessity we have faced was that created by the *Flagg Brothers* Court's clear implication that a taking of property under

properly dismissed for failure to state a claim cognizable under § 1983.

*AFFIRMED.*

DONALD RUSSELL, Circuit Judge, concurs in the result.

BUTZNER, Circuit Judge, with whom WINTER, Circuit Judge, joins, dissenting:

I cannot concur in the court's restrictive interpretation of 42 U.S.C. § 1983.[1] Sound precedent persuades me that a creditor acts under color of law when he unilaterally invokes an attachment statute[2] and causes a sheriff to levy on his debtor's goods before a judicial officer has determined whether the facts justify prejudgment seizure.

In *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980), the Court restated the elements of a cause of action under § 1983:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

The debtor made both of the required allegations. This appeal, however, is not concerned with the first element. At this stage of the proceedings, the constitutionality of the attachment statute and the credi-

tor's good faith reliance on it are not issues. Good faith is an affirmative defense. *Gomez,* 100 S.Ct. at 1924. Moreover, the clerk of court and the sheriff are not indispensible parties. *Adickes v. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

The sole issue involves the second element specified in *Gomez.* In the context of this case, it is whether the creditor acted under color of state law within the meaning attributed to this concept in § 1983.

*Dennis v. Sparks,* —— U.S. ——, ——, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980), reiterates the Court's explanation of acting under color of law:

> [T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.

*Dennis* reaffirmed the interpretation of § 1983 that the Court expounded in *Adickes,* supra 398 U.S. at 152, 90 S.Ct. at 1605, but *Dennis* adds this note of caution: "Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." 101 S.Ct. 186. We held as much in *District 28 UMW v. Wellmore Coal Corp.,* 609 F.2d 1083 (4th

---

state enforced creditor remedies of the *Snia-dach* type does involve state action. That was a necessity that the *Wellmore* panel thought not upon it, for it expressly noted that such judicial proceedings might create a different state action problem. 609 F.2d at 1087. Reserving the question whether, under the *Flagg Brothers* analysis of "overt official involvement" in judicial proceedings, the type of proceeding has any critical bearing upon the state action issue in § 1983 claims against the private litigant who instituted them, we observe that both the *Wilkins* and *Wellmore* decisions could readily be rested upon the under color of state law analysis we have applied to reach decision in the instant case without reaching any separate state action issue.

Also supporting the result we reach, though upon a variety of rationales, see *Louisville Area*

*Inter-faith Comm. v. Nottingham Liquors, Ltd.,* 542 F.2d 652 (6th Cir. 1976); *Grow v. Fisher,* 523 F.2d 875 (7th Cir. 1975); *Stevens v. Frick,* 372 F.2d 378 (2d Cir. 1967).

1. 42 U.S.C. § 1983 provides in pertinent part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. . . .

2. Va.Code §§ 8.01.533–576 (1977).

Cir. 1979), where resort to a court for a temporary injunction did not establish liability under § 1983. But in *Wellmore*, 609 F.2d at 1086, we carefully distinguished attachment cases, such as *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), where, as here, a creditor unilaterally invoked a statute that did not require notice to the debtor or resort to a court for a hearing before the sheriff seized the debtor's property.

Two Supreme Court cases, which are at opposite poles with respect to creditors' conduct in the context of § 1983, explain the principles that govern this appeal. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), held that a warehouseman's proposed sale of goods as permitted by state law was not state action within the meaning of the fourteenth amendment. There must be something more to attribute the warehouseman's act to the state, and at 436 U.S. 157, 98 S.Ct. at 1734 the Court explained what was lacking:

> This total absence of overt official involvement plainly distinguishes this case from earlier decisions imposing procedural restrictions on creditors' remedies such as ... *Fuentes v. Shevin*, 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972)....

Since the sale could be conducted without the assistance of any state officials, no claim could be made in *Flagg* that the warehouseman was acting under color of law by willfully participating with the state's agents.

In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Court found that both elements of a cause of action under § 1983 were satisfied. From the standpoint of the sole issue now before us—whether the creditor acted under color of law—the factual backgrounds of *Fuentes* and this case are in all material respects similar.[3]

Both *Fuentes* and this case arose from creditors' ex parte applications to clerks of courts for prejudgment writs directing sheriffs to attach the debtors' property in accordance with state laws. In each case, apart from ascertaining the creditor's facial compliance with the statute, the officials acted in their ministerial capacities. Unlike a judge, they made no factual findings or legal conclusions about the merits of the creditor's claim or even about his justification for seeking immediate seizure. They acted at the behest of and in behalf of the creditor. Obedient to the creditor's petition and the attachment statute, the clerk issued the writ, and the sheriff attached the debtor's goods. The creditor willfully participated with the officers in this joint undertaking for it was he alone who induced them to act in accordance with the law that he invoked.

*Fuentes* emphasizes that a creditor under such circumstances does not play a peripheral role. His participation with the officers is the heart of the enterprise. The Court at 407 U.S. 93, at 92 S.Ct. 2001 described the relationship between state law and creditors in these terms:

> The statutes, moreover, abdicate effective state control over state power. Private parties, serving their own private advantage, may unilaterally invoke state power to replevy goods from another. No state official participates in the decision to seek a writ; no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark.

Thus, *Fuentes* sustains the conclusion that when, as here, a creditor unilaterally invokes a prejudgment attachment statute to have state agents attach his debtor's goods, it is apparent that the creditor acts under color of state law as a willful participant with the state's agents in a joint un-

---

**3.** This is not to say that the creditor in this case is liable. As previously mentioned, liability depends on a declaration that the Virginia statute is unconstitutional and on the resolution of the creditor's good faith defense. Neither of these issues has been addressed, and I express no opinion about them.

dertaking. No other source endows him with the power to enlist the services of state officials for his private advantage before adjudication of the debtor's right to possession.

To be sure, as the majority opinion points out, a private person acts under color of law when he conspires with a public official to corrupt or subvert state power. *See Dennis v. Sparks,* —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). *Fuentes,* however, explains at 407 U.S. 93, at 92 S.Ct. 2001 that this is not the only way in which a private person can act under color of law. Indeed, the conclusion this dissent reaches is not unique. Other courts have not questioned that under circumstances essentially similar to those in this case a creditor acts under color of law within the contemplation of § 1983. *See, e. g., Welsh v. Kinchla,* 577 F.2d 767, 769 (1st Cir. 1978); *G. H. McShane Co., Inc. v. McFadden,* 554 F.2d 111, 113 (3d Cir. 1977); *Kacher v. Pittsburgh National Bank,* 545 F.2d 842, 847 (3d Cir. 1976); *Tucker v. Maher,* 497 F.2d 1309, 1315 (2d Cir. 1974); *Rios v. Cessna Finance Corp.,* 488 F.2d 25, 28 (10th Cir. 1973); *Gunter v. Merchants Warren National Bank,* 360 F.Supp. 1085, 1092 (D.Me.1973) (three-judge court.)[4]

I would vacate the district court's judgment of dismissal and remand the case for further proceedings consistent with this opinion.

**WIDENER, Circuit Judge, concurring in the result:**

I think it sufficient to hold under *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), and *District 28,*

*UMWA v. Wellmore Coal Corp.,* 609 F.2d 1083 (4th Cir. 1979), that a private litigant who does no more than invoke a presumptively valid State judicial procedure, although he may have acted with malice, has not acted under color of State law and thus is not subject to suit under 42 U.S.C. § 1983.

**MURNAGHAN, Circuit Judge, dissenting:**

In large measure I agree with what Judge Butzner has written. I write separately only to call attention to a point or two which seem to merit mention.

1. Judge Butzner tellingly quotes from *Fuentes v. Shevin,* 407 U.S. 67, 93, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972) its description of a situation (replevin under a conditional sales contract) essentially identical with our circumstances of a pre-judgment attachment.[1] That language, especially the reference to "private parties, serving their own private advantage" indicates that, on the rationale of Judge Phillips in the majority opinion, even after the statute has been authoritatively declared to be unconstitutional, a private individual who manages to prevail upon a bumbling, but non-conspiring clerk to issue a replevin writ under the blatantly unconstitutional statute would still not be acting under color of state law, and, hence, would not infringe 42 U.S.C. § 1983. That result seems inescapably wrong.

2. Given the extant decisions, especially *Fuentes v. Shevin,* the constitutionality of the state attachment statute is, at the least, questionable.[2] A hearing is necessary.

---

**4.** In all of these cases, save *Gunter* where the issue of damages was deferred, judgment was entered for the creditors because they acted in good faith when they attached the debtor's property. In the case before us, the debtor alleged that the creditor acted maliciously, and this allegation apparently would satisfy the pleadings required by the cases cited in the text. Be that as it may, the question of the creditor's good faith is not before us in this appeal. As we have previously mentioned, *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980), now estab-

lishes that good faith is an affirmative defense rather than an element of a cause of action under § 1983.

**1.** The reference in footnote 23, 407 U.S. at 91, footnote 23, 92 S.Ct. at 1999, to attachment essential to the securing of the state court's jurisdiction does not reach the present case, where non-residency of the defendant in the state court proceeding did not exist.

**2.** The absence of any requirement for pre-seizure judicial action renders the statute suspect.

However, it is desirable to point out that such may not always be so, or that, in another case, regardless of constitutionality, good faith, while normally a matter of affirmative defense, might stand established from the pleadings, or from what the court might accept as a matter of judicial notice. There are situations where tremors first introduce a breach in what theretofore has been regarded as a solid, safe, and impenetrable legal wall. Such was, perhaps, the case with the seemingly unquestioned validity of wage garnishment and replevin under conditional sales contracts, each obtained without judicial intervention, until *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes* first entered upon the scene. Before the decisions in those cases, a judgment for defendants in a § 1983 action probably would have been in order, even at the Fed. R.Civ.P. 12(b) stage. An allegation similar to the essentially conclusory allegation that attachment had been maliciously invoked would probably have been accorded little weight.

But such is not the case here, for *Fuentes* was decided eight years ago. The wall formerly impenetrable is honeycombed with fissures. The attachment act evidently may be unconstitutional, and defendants may have been chargeable with, at least, answerability should the act be found to violate the Fourteenth Amendment.