706 F.2d 844
 72 A.L.R.Fed. 711
 Lowell BULLER, Dale Buller, Happy Family Farmers Co.,
Growing Animals Producers of Natron County,
Wyoming and South Dakota Livestock
Enterprises, Appellants,
v.
Milton BUECHLER, and Kenneth Nordman, d/b/a Nordman Brothers
Construction, Appellees,
v.
Dennis L. DUNCAN, Individually and as Representative of
Zimmer, Richter and Duncan, a Partnership or
Association, and Zimmer, Richter and
Duncan and John Homan, Appellees.
 No. 82-1770.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 16, 1983.
Decided May 5, 1983.
 
 Carleton R. Hoy, Sarah Richardson, Linda H. Roberts, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for appellees John Homan, Dennis L. Duncan, and Zimmer, Richter and Duncan.
 Frank J. Brady, Yankton, S.D., for appellee, Milton Buechler.
 Lee R. Burd, Sioux Falls, S.D., for appellants.
 Richard Bogue, Canton, S.D., for defendant and appellee.
 Before HEANEY and FAGG, Circuit Judges, and HANSON,* Senior District Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Plaintiffs Dale and Lowell Buller and the farming enterprise they operate appeal from the district court's order granting summary judgment in favor of the defendants on the plaintiffs' section 1983 action. The plaintiffs claim that the defendants denied them procedural due process by garnishing the proceeds of the plaintiffs' auction sale pursuant to South Dakota's unconstitutional garnishment law. The district court held that the plaintiffs failed to establish the section 1983 requirement that the defendants acted "under color of state law." Because we believe that the plaintiffs did satisfy this statutory requirement, we reverse the district court's judgment and remand to permit the plaintiffs to proceed with their action.
 
 I.
 FACTS
 
 2
 The plaintiffs are engaged in a family farming operation near Parker, South Dakota. On March 22, 1980, they held a large public auction. Near the beginning of the sale, a county deputy sheriff served on the assistant auctioneer and the plaintiffs three sets of garnishment documents representing the claims of John Homan, Kenneth Nordman and the law firm of Zimmer, Richter and Duncan (Zimmer firm). The plaintiffs concede that the three garnishment actions substantially complied with the requirements of South Dakota's garnishment statute, S.D. Codified Laws Ann. Secs. 21-18-1 et seq. That statute, however, had been declared unconstitutional six years earlier by the United States District Court for the District of South Dakota. Stuckers v. Thomas, 374 F.Supp. 178 (D.S.D.1974).
 
 
 3
 As a result of the garnishment, the auctioneer retained in his possession $281,000 from the proceeds of the sale; the creditors' claimed debts totaled approximately $15,000. On the Monday following the Saturday auction, the plaintiffs' attorney contacted Milton Buechler, the lawyer for Nordman, and Dennis Duncan, the lawyer for Homan and for the Zimmer firm. The plaintiffs' attorney informed her counterparts that the South Dakota garnishment law was unconstitutional and requested that they release the garnished auction proceeds. Attorney Duncan promptly agreed to seek the release of the funds, but according to the plaintiffs, attorney Buechler refused to agree to the release.
 
 
 4
 Through the efforts of the plaintiffs, their counsel, and attorney Duncan, all but $15,000 of the garnished funds were released by approximately the end of March, 1980. On June 5, 1980, the plaintiffs commenced this action pursuant to 42 U.S.C. Sec. 1983 against attorney Buechler and his client Nordman, and attorney Duncan and his clients Homan and the Zimmer firm. The plaintiffs alleged that the defendants had taken their property without due process in violation of the fourteenth amendment by utilizing S.D. Codified Laws Ann. Secs. 21-18-1 et seq. to garnish the proceeds from their auction.[1] In May, 1982, the district court granted summary judgment in favor of all defendants.
 
 
 5
 Prior to submission of this appeal, the plaintiffs reached a settlement with Duncan, Homan, and the Zimmer firm. Thus, we need only determine whether the district court properly entered summary judgment in favor of defendants Buechler and Nordman.
 
 II.
 STANDARD OF REVIEW
 
 6
 Summary judgment is justified only when, viewing the facts and inferences that may be derived therefrom in the light most favorable to the nonmoving party, the court is convinced that there is no evidence to sustain a recovery under any circumstances. E.g., Westborough Mall, Inc. v. City of Cape Girardeau, Mo., 693 F.2d 733, 736-737 (8th Cir.1982). The burden thus is on the defendants to establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Id.; Ralph's Distributing Co. v. AMF, Inc., 667 F.2d 670, 672 (8th Cir.1981). Applying these standards to this case, we cannot agree with the district court that the defendants are entitled to summary judgment.
 
 III.
 DISCUSSION
 
 7
 A. The "Under Color of State Law" Requirement.
 
 
 8
 To establish a cause of action under 42 U.S.C. Sec. 1983, the plaintiffs must establish (1) that they have been deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). The district court granted summary judgment in favor of Buechler and Nordman because it found that their actions were not taken under color of state law.[2] Relying on the Fourth Circuit's decision in Lugar v. Edmondson Oil Co., Inc., 639 F.2d 1058 (4th Cir.1981) (en banc), rev'd, --- U.S. ----, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the court reasoned that the defendants, by instituting proceedings under South Dakota's garnishment law, did not engage in sufficient joint action with state officials to be considered state actors for purposes of section 1983.[3]
 
 
 9
 In Lugar v. Edmondson Oil Co., Inc., supra, 639 F.2d at 1058, the Fourth Circuit upheld Virginia's prejudgment attachment statute against a procedural due process challenge. The Court found that the private creditor who instituted the attachment proceedings did not act under color of state law because "merely invoking a state's judicial process and thereafter participating in it solely as a private litigant does not constitute joint engagement or participation by the private litigant with the state officials who then independently conduct and enforce that process." Id. at 1069. It concluded that a contrary conclusion was not compelled by the line of prejudgment attachment and garnishment cases in which the Supreme Court had addressed the merits of the debtors' procedural due process claims because they involved "state action" under the fourteenth amendment, rather than action "under color of state law" within section 1983.[4] Id. at 1066-1068.
 
 
 10
 Subsequent to the decision of the court below, the Supreme Court reversed the Fourth Circuit in Lugar v. Edmondson Oil Co., Inc., --- U.S. ----, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (hereafter Lugar ). After reviewing the Sniadach line of cases, see note 4, supra, the Supreme Court concluded that the Court of Appeals had erred in distinguishing between "state action" and action "under color of state law." Id. --- U.S. at ---- - ----, 102 S.Ct. at 2752-53, 73 L.Ed.2d at 492-494. It stated that these cases demonstrated that in the context of garnishment actions and prejudgment attachments, the constitutional requirement of "state action" and the statutory requirement of action "under color of state law" were the same. Id. --- U.S. at ----, 102 S.Ct. at 2753, 73 L.Ed.2d at 494.
 
 
 11
 The Court then articulated a two-part test for determining whether the conduct allegedly causing the deprivation of a federal right constitutes state action:
 
 
 12
 First, the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. * * * Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.
 
 
 13
 Id. --- U.S. at ----, 102 S.Ct. at 2754, 73 L.Ed.2d at 495.
 
 
 14
 The plaintiffs argue that the district court's holding that the defendants did not act under color of state law must be reversed because it relied on the Fourth Circuit's erroneous Lugar decision. They contend that under the two-prong test articulated by the Supreme Court in Lugar, the defendants acted under color of state law by invoking S.D. Codified Laws Ann. Secs. 21-18-1 et seq., which permitted the defendants to garnish the plaintiffs' property by preparing ex parte the required garnishment papers and by having them served by the county deputy sheriff.
 
 
 15
 There is no question that the first requirement of the Lugar state action test is met here. In this case, as in Lugar, the state created the procedural scheme by which the defendants were able to garnish the plaintiffs' property. See Lugar, --- U.S. at ----, 102 S.Ct. at 2756, 73 L.Ed.2d at 498. The more difficult question is whether the plaintiffs have satisfied the second part of the state action test.
 
 
 16
 The Lugar Court described the second, or "state actor," requirement of its state action test as follows:
 
 
 17
 As is clear from the discussion [of the Sniadach line of cases], we have consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. * * *
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 The Court of Appeals erred in holding that in this context "joint participation" required something more than invoking the aid of state officials to take advantage of state created attachment procedures. That holding is contrary to the conclusions we have reached as to the applicability of due process standards to such procedures. Whatever may be true in other contexts, this is sufficient when the state has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute.
 
 
 21
 Id.
 
 
 22
 The defendants urge that the second requirement of the state action test is not satisfied in this case. They argue that the challenged statute here, unlike the one in Lugar, does not require "joint participation" between the private individuals and state officials in the seizure of the disputed property. Under the Virginia attachment statute challenged in Lugar, the creditor filed an ex parte petition for a writ of attachment, which was issued by a clerk of the state court and executed by the county sheriff. Id. --- U.S. at ----, 102 S.Ct. at 2747, 73 L.Ed.2d at 487. The defendants emphasize that the South Dakota garnishment law, in contrast, permits a creditor to freeze property by preparing a summons, complaint and affidavit of garnishment without filing these papers with a clerk of the state court, S.D. Codified Laws Ann. Secs. 21-18-1, 21-18-3, and by having these papers served by the sheriff or any person not a party to the action, id. at Sec. 21-18-7. The defendants thus claim that they cannot be fairly characterized as "state actors" because the South Dakota garnishment procedure can be invoked by a private citizen without any joint participation with state officials.
 
 
 23
 We cannot agree with the defendants' position. Although South Dakota law may not have required the defendants to rely on state officials to invoke its garnishment procedures, they concede that, in fact, they did so by having a deputy sheriff serve the garnishment papers which prevented the auctioneer from transferring the auction proceeds to the plaintiffs. The Supreme Court in Lugar held that the private creditors were state actors within the meaning of section 1983 on the basis of just this type of reliance on state officials to take advantage of the prejudgment attachment law.
 
 
 24
 Moreover, the defendants' suggestion that South Dakota's garnishment procedure can be utilized without any involvement by state officials is inaccurate. Before the garnished property is transferred to the creditor, the summons, complaint and affidavit prepared by the creditor must be filed in the state court. S.D. Codified Laws Ann. Sec. 21-18-3. The garnishee then must file an answer admitting or denying liability to the debtor named in the garnishee summons. Id. at Secs. 21-18-27, 21-18-30. If the garnishee admits liability to the debtor, the garnishee may pay the amount for which he or she is liable to the clerk of court or to the sheriff having a warrant of attachment or writ of execution issued by the state court. Id. at Sec. 21-18-32. If the garnishee denies such liability, the state court holds a hearing to determine the propriety of the garnishment. Id. at Secs. 21-18-31, 21-18-44.
 
 
 25
 Thus, South Dakota's garnishment procedures--like the garnishment and prejudgment attachment statutes challenged in other cases--require substantial involvement by state officials. Cf., Lugar, supra, --- U.S. at ----, 102 S.Ct. at 2747, 73 L.Ed.2d at 487; North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 602-603, 95 S.Ct. 719, 720-721, 42 L.Ed.2d 751 (1975); Mitchell v. W.T. Grant Co., 416 U.S. 600, 601-602, 94 S.Ct. 1895, 1897, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 70-71, 92 S.Ct. 1983, 1989, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 338-339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969). Therefore, the defendants' suggestion that they could obtain the disputed property under South Dakota's garnishment law without the aid of any state official is simply incorrect.
 
 
 26
 In Lugar, the Supreme Court emphasized that the Court of Appeals decision "failed to give sufficient weight to that line of cases beginning with Sniadach v. Family Finance Corp." Lugar, supra, --- U.S. at ----, 102 S.Ct. at 2749, 73 L.Ed.2d at 489 (citation omitted). It then stated:
 
 
 27
 [This] Court has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the state act jointly with a creditor in securing the property in dispute. * * * Necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials constitutes state action.
 
 
 28
 Id. --- U.S. at ----, 102 S.Ct. at 2752-2753, 73 L.Ed.2d at 493-494 (citations omitted).
 
 
 29
 We believe that under the circumstances present here, we too must find that the plaintiffs satisfied the second requirement of the Lugar state action test: the defendants joint participation with state officials was sufficient to characterize them as state actors.[5]
 
 
 30
 In summary, we hold that the defendants' conduct which allegedly deprived the plaintiffs of their property constituted state action as a matter of law.[6] The plaintiffs, therefore, have demonstrated that the defendants acted under color of state law as required by section 1983. Accordingly, the district court erred in granting summary judgment in favor of the defendants--unless they are immune from section 1983 liability.
 
 
 31
 B. Qualified or Good Faith Immunity.
 
 
 32
 The defendants alternatively contend that even if we find that they did act under color of state law, the district court's judgment should be affirmed because they did nothing but rely on the South Dakota garnishment statute. The defendants are contending in substance that they are entitled to qualified or good faith immunity from section 1983 liability.[7] Because of its holding, the district court did not reach this issue.
 
 
 33
 The defendants bear the burden of proving that they are entitled to qualified immunity. Harlow v. Fitzgerald, --- U.S. ----, ---- - ----, 102 S.Ct. 2727, 2737-2739, 73 L.Ed.2d 396, 408-411 (1982). See Nahmod, Civil Rights and Civil Liberties Litigation, Sec. 8.01, at 230 (1979). Their immunity claim will be defeated if their conduct violated a clearly established constitutional or statutory right of which they knew or should have known. Harlow v. Fitzgerald, supra, --- U.S. at ----, 102 S.Ct. at 2737-2739, 73 L.Ed.2d at 408-411; id. --- U.S. at ----, 102 S.Ct. at 2740, 73 L.Ed.2d at 412 (Brennan, J., concurring).
 
 
 34
 The plaintiffs argue that the defendants did not act in good faith in this case. Before we reach this issue, however, we must determine whether a good faith defense or qualified immunity can be asserted by private individuals who, by their "joint participation" with state officials, become state actors within the meaning of section 1983.
 
 
 35
 By its terms, section 1983 "creates a species of tort liability that on its face admits of no immunities." Imbler v. Pachtman, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Nonetheless, the Supreme Court has found that certain persons are immune from suit under section 1983 when the "tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so provided had it wished to abolish the doctrine.' " Owen v. City of Independence, 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980), quoting Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). We believe that the defendants here can assert a good faith defense or qualified immunity because both these criteria are satisfied. Accord Folsom Investment Co., Inc. v. Moore, 681 F.2d 1032, 1037-1038 (5th Cir.1982).
 
 
 36
 A good faith defense to section 1983 liability under the circumstances present here has roots in the common law. See id. at 1038. The common law tort of malicious prosecution could be used as a remedy for attachment proceedings wrongfully commenced when the plaintiff could prove that those proceedings were instituted with malice and without probable cause. See Prosser, Handbook of The Law of Torts, Sec. 120 (4th Ed.1971); Note, Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis, 88 Yale L.J. 1218 (1979). At the time Congress enacted section 1983, some jurisdictions also recognized the tort of wrongful attachment, which required proof that the attachment was commenced wrongfully, maliciously, and without probable cause. See Harper & James, The Law of Torts, Sec. 4.8 (1956).
 
 
 37
 These common law malicious prosecution and wrongful attachment torts thus recognized a defense based on probable cause. The most important public policy justification for this defense was that a citizen should not be penalized for resorting to the courts to vindicate rights that he or she in good faith had probable cause to believe that he or she possessed. Folsom Investment Co., Inc. v. Moore, supra, 681 F.2d at 1038. That same public policy supports the recognition of a qualified immunity from section 1983 liability in this case.
 
 
 38
 There is a strong public interest in permitting private individuals to rely on presumptively valid state laws and in shielding those citizens from monetary damages when they resort to a legal process which they neither know, nor reasonably should know, is invalid. Id. at 1037. Moreover, it would be anamolous to hold that private individuals are state actors within the meaning of section 1983 because they invoked a state garnishment statute and the aid of state officers; but deny those private individuals the qualified immunity possessed by the state officials[8] with whom they dealt because they technically are not state employees.[9]
 
 
 39
 In addition, according qualified immunity to the defendants accommodates the competing interests involved here. On one hand, the good faith defense permits private creditors to seek redress under presumptively lawful statutes and allows state officials involved in garnishment actions to discharge their duties without fear of being subjected to frivolous lawsuits. See Harlow v. Fitzgerald, supra, --- U.S. at ----, 102 S.Ct. at 2737, 73 L.Ed.2d at 408; Wood v. Strickland, 420 U.S. 308, 319-320, 95 S.Ct. 992, 999-1000, 43 L.Ed.2d 214 (1975). On the other hand, permitting private individuals to assert qualified immunity will not impair the public interest in deterrence of unlawful conduct and in compensation of victims which underlies section 1983. Indeed, the good faith defense promotes that public interest because it allows recovery against individuals who take action that they know or reasonably should know violates the clearly established statutory or constitutional rights of debtors. Harlow v. Fitzgerald, supra, --- U.S. at ----, 102 S.Ct. at 2739, 73 L.Ed.2d at 411.
 
 
 40
 Finally, the Supreme Court's decision in Lugar also supports the conclusion that the defendants here may assert a good faith defense. The majority opinion stated that the problem of holding private individuals liable for invoking seemingly valid state laws subsequently found to be unconstitutional "should be dealt with not by changing the character of the [section 1983] cause of action but by establishing an affirmative defense." --- U.S. at ---- n. 23, 102 S.Ct. at 2737 n. 23, 73 L.Ed.2d at 499 n. 23. The Court then suggested as a defense the qualified immunity available to state officials, although it declined to resolve the issue. Id. In dissent, Justice Powell, joined by two other Justices, went beyond the majority and expressly concluded that a private creditor who invoked a presumptively valid state prejudgment attachment law and the aid of state officials was entitled to assert a good faith defense. Id. --- U.S. at ---- n. 14, 102 S.Ct. at 2763-64 n. 14, at 507 n. 14 (Powell, J., dissenting).
 
 
 41
 Thus, we conclude that in enacting section 1983 Congress did not intend to subject to liability private individuals who in good faith resorted to state garnishment or prejudgment attachment procedures. The question we now turn to is whether defendants Buechler and Nordman are entitled to claim such a good faith defense in this case.
 
 
 42
 In Harlow v. Fitzgerald, supra, the Supreme Court recently reviewed the scope of qualified immunity available to government officials named as defendants in section 1983 actions. It first observed that an official's subjective good faith is generally a disputed question of fact that cannot be resolved on a motion for summary judgment. --- U.S. at ----, 102 S.Ct. at 2737, 73 L.Ed.2d at 409. The Court then articulated its qualified immunity test: a good faith defense will be defeated if the defendant's conduct violated a clearly established statutory or constitutional right of which he or she knew or should have known. Id. --- U.S. at ----, 102 S.Ct. at 2737-2739, 73 L.Ed.2d at 408-411; id. --- U.S. at ----, 102 S.Ct. at 2740, 73 L.Ed.2d at 412 (Brennan, J., concurring). If the law at the time of the defendant's conduct was not clearly established, he or she could not reasonably be expected to anticipate subsequent developments, nor could he or she be fairly said to "know" that the law proscribed conduct not previously identified as unlawful. Id. --- U.S. at ---- - ----, 102 S.Ct. at 2738-2739, 73 L.Ed.2d at 410-411.
 
 
 43
 On the record before us, we cannot determine whether the defendants have satisfied the requirements of this good faith defense. Unlike the situation envisioned by the majority and dissenting opinions in Lugar, the South Dakota garnishment law involved in this case was declared unconstitutional prior to, rather than subsequent to, the defendants' invocation of the statute's procedures. That fact obviously is extremely important to the determination of whether the defendants here acted in good faith. The record also reveals several factual questions which must be resolved before it can be decided if Nordman and Buechler are entitled to immunity. The district court, of course, made no factual findings resolving these questions or the ultimate issue of good faith because it held that the defendants did not act under color of state law. Accordingly, this matter must be remanded to the district court for a determination of whether the defendants are immune from section 1983 liability because they acted in good faith in causing the plaintiffs' property to be seized pursuant to South Dakota's garnishment law.
 
 
 44
 Defendant Buechler argues that a remand is unnecessary with respect to him because he cannot be liable under section 1983 since he, as an attorney, only instituted the garnishment proceedings at the request of his client Nordman. We disagree. Buechler apparently actually caused the garnishment procedures to be implemented against the plaintiffs, and he, as an attorney, most likely was in a better position than his client to know whether South Dakota's garnishment law was constitutional. Moreover, there are allegations that Buechler refused to comply with Nordman's directions to release the plaintiffs' property. Finally, Buechler, as well as Nordman, stood to gain monetarily from the use of the state garnishment procedures. Under these circumstances, we believe that an attorney may be liable for damages under section 1983 if on the behalf of a client, he or she pursued a garnishment or prejudgment attachment proceeding which he or she knew or reasonably should have known would violate the clearly established constitutional or statutory rights of a debtor. See United States General Inc. v. Schroeder, 400 F.Supp. 713, 716-717 (E.D.Wis.1975). Therefore, the district court must resolve this issue on remand.
 
 III.
 CONCLUSION
 
 45
 The district court's judgment is reversed. This matter is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior District Judge, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The plaintiffs also sought a preliminary injunction to obtain the release of the remaining garnished funds. At the hearing on the plaintiffs' motion for a preliminary injunction, Buechler agreed to release the remaining funds. The plaintiffs apparently obtained those sales proceeds by mid-June, 1980
 
 
 [2]
 Defendant Buechler also contends that the plaintiffs have not satisfied the first element of a section 1983 cause of action because no taking of their property occurred. Buechler bases his theory on S.D. Codified Laws Ann. Sec. 21-18-11, which provides that from the time of the service of the garnishment summons, the garnishee is liable to the creditor for the amount of the debtor's property then in the garnishee's possession or under his control. Buechler argues that because the garnishment papers were served on the auctioneer before the auction began, the auctioneer did not have possession or control of any of the Bullers' property and their creditors, therefore, had no legal claim to any of that property
 We cannot accept Buechler's theory. The defendants' pursuit of the garnishment action apparently denied the plaintiffs the proceeds from the sale of their property for over three months. Since the plaintiffs could not obtain their money from the auctioneer regardless of whether he technically possessed the plaintiffs' property when he was served with the garnishment papers, a taking occurred by any common sense or legal definition. Indeed, the Supreme Court has had no difficulty in finding an unconstitutional taking in consistently striking down ex parte garnishment and prejudgment attachment statutes. See note 4 infra.
 Thus, we reject defendant Buechler's argument based on S.D. Codified Laws Ann. Sec. 21-18-11. Nonetheless, because the district court in its summary judgment proceedings did not determine whether the plaintiffs have established the statutory requirement that they were deprived of a right secured by the Constitution or laws of the United States, we must remand this issue. On remand, Buechler is not free to again raise the theory we have rejected here, but the defendants may advance any other legal theories or introduce any factual evidence relevant to the taking issue.
 
 
 [3]
 The district court also stated that the fact that defendant Buechler is an attorney, and thus an officer of the court, did not in and of itself convert his conduct into action under color of state law. Although this statement is correct, see Chambers v. Kaplan, 648 F.2d 1193, 1194 & n. 3 (8th Cir.1981), it does not resolve the issue of whether Buechler's participation in the garnishment of the plaintiffs' property pursuant to S.D. Codified Laws Ann. Secs. 21-18-1 et seq. constituted conduct under color of state law for purposes of section 1983
 
 
 [4]
 The Fourth Circuit characterized as fourteenth amendment cases, North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). It found Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), not to be relevant even though it was a section 1983 case because the defendants included the state attorney general as well as the private creditor
 
 
 [5]
 The defendants contend that Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), compels the opposite conclusion. We cannot agree. In Flagg Brothers, the Supreme Court held that a warehouseman was not acting pursuant to state law when he proposed to sell goods entrusted to him as authorized by state law. Id. at 166, 98 S.Ct. at 1738. In Flagg Brothers, unlike this case, the defendants could invoke the procedures in the challenged state statute without any resort to or assistance from state officials. Id. at 151-153, 98 S.Ct. at 1731-1732. Indeed, in finding Flagg Brothers not controlling in Lugar, the Supreme Court emphasized the absence of any requirement under the New York law that the warehouseman do "something more" than arrange a private sale. Lugar, supra, --- U.S. at ----, 102 S.Ct. at 2754, 73 L.Ed.2d at 496
 
 
 [6]
 For purposes of reviewing the district court's order granting summary judgment in favor of the defendants, we must accept as true the plaintiffs' allegations that they were deprived of a right secured by the Constitution or laws of the United States. E.g., Westborough Mall, Inc. v. City of Cape Girardeau, Mo., 693 F.2d 733, 736-737 (8th Cir.1982). On remand, the district court must determine whether the plaintiffs in fact were deprived of a federal right. See note 2, supra
 
 
 [7]
 The defendants do not contend that they are entitled to absolute immunity. It is clear that such absolute immunity to section 1983 damage liability is limited to a few categories of persons, and that the defendants' acts here do not fall within any of those categories. See infra, at 851 & n. 8
 
 
 [8]
 State legislators, judges and prosecutors acting within the scope of their jurisdiction or duties are protected by absolute immunity from section 1983 liability; all other government officials are protected by a good faith defense or qualified immunity. See collected cases in Nahmod, Civil Rights and Civil Liberties Litigation, Secs. 7-8 (1979 & Supp.1982); Nahmod, Constitutional Accountability in Section 1983 Litigation, 68 Iowa L.Rev. 1, 2-3 (1982); and Note, Developments in the Law--Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1197-1204 (1977)
 
 
 [9]
 We are not suggesting that the defendants' qualified immunity is derived from the immunity of the state official whose aid they enlisted. The Supreme Court has utilized a "functional" rather than "derivative" approach to immunity from section 1983 liability. See Harlow v. Fitzgerald, --- U.S. ----, ---- - ----, 102 S.Ct. 2727, 2734-2735, 73 L.Ed.2d 396, 405-406 (1982)