620 F.Supp. 688 (1985)
INTERCO INCORPORATED, Plaintiff,
v.
PENSION BENEFIT GUARANTY CORPORATION, Defendant.
No. 84-2064C(1).
United States District Court, E.D. Missouri, E.D.
November 1, 1985.
*689 Keith Mattern, St. Louis, Mo., for plaintiff.
Lawrence Landgraff, Washington, D.C., Henry Fredericks, Asst. U.S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before the Court on cross motions for summary judgment. The parties filed a joint stipulation of uncontested facts, the majority of which provide the historical background of this case and are summarized below.

FACTS
In 1964, Interco (then called International Shoe Company) acquired P.N. Hirsch & Co. (hereinafter Hirsch), a corporation that operated a chain of junior department stores. Hirsch was subsequently liquidated and converted into an unincorporated division of Interco. Hirsch stores were located in various midwestern, western and southern states. Eligible employees of Hirsch were covered by a single, defined pension plan (hereinafter the Hirsch Pension Plan). On November 5, 1983, Interco sold most of the assets located in the midwestern and southern states. The remaining assets still held by Interco were liquidated into Interco and, effective February 13, 1984, the name of P.N. Hirsch & Co. was changed to Idaho Department Stores Co., a division of Interco.
Under the terms of the sale agreement, many Hirsch employees in the midwestern and southern states were terminated on the date of the sale. Interco retained certain management personnel and various other personnel as well as the assets and personnel for the stores located in the western states. As a result of the termination of the employees in the midwestern and southern states, the number of active employees in the Hirsch Pension Plan was reduced from approximately 1,974 to approximately 900.
The central dispute in this lawsuit concerns Interco's treatment of the Hirsch Pension Plan. On February 17, 1984, Interco notified the Pension Benefit Guaranty Corporation (PBGC) of its intention to terminate the Hirsch Pension Plan pursuant to § 4041(a) of Title IV of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1301 et seq., as amended P.L. 96-364, 94 Stat. 1208 (1980). The PBGC is a wholly-owned United States Government corporation created by 29 U.S.C. § 1302 to administer the pension plan termination insurance program established by Title IV of ERISA. Interco, in its notice to the PBGC proposed a termination date of March 1, 1984.
The precise legal consequences of Interco's actions with respect to the Hirsch Pension Plan form the heart of this dispute. The following steps were then taken by Interco and are stated herein for the purpose of explaining the context of this case. On February 29, 1984, Interco implemented a new pension plan, designated the Idaho Department Store Subsidiaries Pension Plan (the Idaho Plan).[1] Following establishment *690 of the Idaho Plan, Interco transferred all remaining active employees who were participants in the Hirsch Plan to the Idaho Plan. In addition to transferring the employees, Interco transferred what it considered to be adequate funds to cover the actuarial value of accrued vested and non-vested benefits for those employees. There is no dispute that the Hirsch and Idaho Pension Plans are substantially identical. It is also not disputed that Interco did not purchase annuities for, nor did it fully vest, any of the employees who were transferred to the Idaho Plan.[2] Following the transfer, the only participants who remained in the Hirsch Plan were those employees who had previously retired or had been terminated by Interco's sale of assets on November 5, 1983.
There is no dispute that the Hirsch Plan, prior to November 5, 1983, had become substantially overfunded. Interco stated to the PBGC in its notice of termination, its intention to purchase annuities for the remaining participants in the Hirsch Plan. It was Interco's belief that the annuity purchase would terminate the Hirsch Plan. Interco would then be eligible to recover approximately $3,500,000.00 in excess contributions.
Interco responded to the PBGC's request for additional information concerning the proposed termination on May 21, 1984. On August 28, 1984, a representative of the PBGC requested that Interco agree to an extension of the ninety day statutory review period pursuant to § 4041(d) of ERISA, 29 U.S.C. § 1341(d). Interco refused the PBGC's request and filed this action. Interco seeks an order compelling the PBGC to issue a notice of sufficiency and an injunction against the PBGC attaching conditions on the notice of sufficiency. The PBGC filed a counterclaim, which was subsequently amended, requesting that this Court declare that the Hirsch Plan is an ongoing employee pension benefit plan as defined in § 3 of ERISA, 29 U.S.C. § 1002.

CONCLUSIONS OF LAW
Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). In passing on a motion for summary judgment, a court is required to view the facts and inferences that may be derived therefrom in the light most favorable to the non-moving party. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983); Vette Co. v. Aetna Casualty and Surety Co., 612 F.2d 1076, 1077 (8th Cir.1980). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller, 706 F.2d at 846. However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). See also 10A Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d, § 2739 (1983). For the reasons which follow, the defendant's motion for summary judgment must be granted and the plaintiff's motion for summary judgment must be denied.
The principal question presented by this case is whether the PBGC is authorized not to accept Interco's spin-off transaction as a *691 termination under § 4041 of ERISA, 29 U.S.C. § 1341. The PBGC claims that its treatment of Interco's transaction is a permissible exercise of the agency's enforcement discretion. Interco, on the other hand, asserts that the PBGC is bound by Interco's characterization of its action as a termination and is required by ERISA to act pursuant to § 4041, 29 U.S.C. § 1341. In reviewing the authority of the PBGC, it is necessary to examine briefly the history of ERISA.
ERISA was established as part of a complex piece of legislation, deemed necessary by Congress to insure soundness and stability in employees' pension funds. The pre-ERISA pension system was subject to numerous abuses and ultimately many employees were denied their due benefits when pension plans were terminated. Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 374, 100 S.Ct. 1723, 1732, 64 L.Ed.2d 354 (1980). Part of the ERISA scheme includes insurance of any plan which "is, or has been determined by the Secretary of the Treasury to be, a plan described in section 401(a) of the Internal Revenue Code of 1954." 29 U.S.C. § 1321(a)(2). See United Steelworkers of America v. Harris & Sons Steel Co., 706 F.2d 1289, 1291 fn. 2 (3d Cir.1983). Thus, the PBGC can guarantee, within certain limits, the payment of all vested benefits upon termination of a covered plan. Id. at 1293. Under § 1302(b)(3), the PBGC is given the power to adopt and amend rules and regulations necessary to enforce Title IV. Central to the ERISA scheme is the ability of the PBGC to both review voluntary terminations and, under certain circumstances, to seek the involuntary termination of ERISA covered pension plans.
It is obvious that terminations and asset preservation are critical to PBGC's liability exposure. Pension Benefit Guaranty Corp. v. Heppenstall, 633 F.2d 293 (3d Cir.1980). To prevent depletion of pension assets by employers, ERISA provides that contributions "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to the participants of the plan and their beneficiaries...." 29 U.S.C. § 1103(c)(1). As the PBGC argues in its brief, the ERISA provision could be easily circumvented through the use of spin-off transactions. To prevent a depletion of the contributions, the PBGC has refused to allow Interco to spin-off the Idaho Plan from the Hirsch Plan without the proper vesting and the annuity purchase. The effect of the PBGC's requirements is to treat the proposed spin-off termination as a termination of the entire pension plan. Interco objects to the PBGC's action as an abuse of authority. This Court disagrees.
As previously stated, the PBGC is charged with enforcing Title IV of ERISA. If this Court denied the PBGC the ability to order Interco to take certain steps to accomplish a valid spin-off, clearly the intent of Congress would be frustrated. See Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund, 575 F.2d 1074, 1077 (3d Cir.1978) ("[I]t is readily apparent that the major concern of congress [in ERISA] was to ensure that bona fide employees with long years of employment and contributions realize anticipated pension benefits.") In prior cases, the courts have recognized the authority of the PBGC to withhold notices of sufficiency until plan administrators amended their distribution plans in a manner acceptable to PBGC's interpretation of the requirements of § 4044(d)(2) of ERISA. See LLC Corp. v. Pension Benefit Guaranty Corp., 703 F.2d 301, 302 (8th Cir.1983).
It is clear that the authority of the PBGC to withhold notices of sufficiency is necessary to enforce ERISA. The case at bar demonstrates this necessity. Interco established the Idaho Plan, then transferred assets which Interco considered adequate to cover the transferred Hirsch employees. Interco's procedure attempts to avoid any review of the spun-off plan's assets by the PBGC. While the exact amount of funds transferred to the Idaho Plan is unclear, it is obvious by Interco's position that the amount is less than what would be necessary to fully vest and purchase annuities *692 for the transferred employees. The PBGC's action seeks only to protect those employees transferred to the Idaho Plan. Prior to the transfer, all Hirsch Plan participants were members of an overfunded pension plan. Following the transfer, the Idaho Plan, if it were immediately terminated, would have insufficient funds to purchase the requisite annuities. Interco, on the other hand, stands to recover a significant amount of funds from the proposed transaction.
Congress noted the great personal tragedy suffered by employees when vested benefits were no longer available when a pension plan was terminated. Nachman Corp. v. Pension Benefit Guaranty Corp., supra, 446 U.S. at 374, 100 S.Ct. at 1732. Moreover, § 4002, 29 U.S.C. § 1302(a) provides that one of the purposes to be carried out by the corporation is "to provide the timely and uninterrupted payment of pension benefits to participants and beneficiaries under plans to which this title applies." It is clear to this Court that spinoff transactions could easily be used to circumvent the distribution provisions of ERISA. Allowing Interco to circumvent the Internal Revenue Code and the intent of ERISA would clearly frustrate the Congress' goal of insuring stability in pension plans.
The requirements which the PBGC is applying to Interco's conduct were published as guidelines on May 21, 1985. Interco objects on several procedural grounds to these guidelines. This Court agrees with the PBGC that the guidelines are irrelevant to the issue in this case. It is clear to this Court that Title IV of ERISA grants the PBGC the authority to deny recognition of Interco's termination action even if the guidelines had never been issued. The PBGC is entitled to great deference with respect to administering and enforcing Title IV. See Connolly v. Pension Benefit Guaranty Corp., 581 F.2d 729, 730 (9th Cir.1978) cert. denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979) ("the determination of the PBGC ... is entitled to great deference in the construction and application of ERISA.") Moreover, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). This Court should only set aside the agency's construction "if it does not have a reasonable basis in law or if it frustrates congressional policy." Metropolitan Medical Center and Extended Care Facility v. Harris, 693 F.2d 775, 780 (8th Cir.1982). This Court agrees with PBGC's interpretation and action in this case. It is the interest and protection of the pension plan participants which is paramount under ERISA.
In reviewing the action of the PBGC, this Court will only set aside the agency's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ..." 5 U.S.C. § 706 (1976). This standard of review is a narrow one. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). See also Bradley v. Bureau of Alcohol, Tobacco and Firearms, 736 F.2d 1238 (8th Cir.1984). As previously stated, this Court finds that the PBGC's actions in this case promote the Congressional policies behind ERISA. This Court, viewing the facts and inferences in a light most favorable to the plaintiff cannot say that the agency's decision was arbitrary and capricious.
This Court's conclusion is further supported by the wording of § 4043(b)(4), 29 U.S.C. § 1343(b)(4), which states that even a finding by the Secretary of Treasury that a partial termination has occurred does not, by itself, constitute or require a termination of a plan under Title IV. It is clear to this Court that Congress recognized that a termination or a partial termination may be largely a question of fact. This question should be resolved by the PBGC. In a case such as this, this Court must defer to the interpretation of the PBGC, an impartial Government agency with the requisite expertise and the responsibility for enforcing the ERISA statute.
*693 Finally, Interco has not demonstrated any unfairness or other burden as a result of the PBGC's action. Interco has not, nor could they allege that any actions were taken in reliance on the PBGC's recognizing Interco's proposed spin-off transaction as a valid termination. Clearly, contributions which resulted in the overfunding of the Hirsch Pension Plan were not made in reliance on recognition of the spin-off transaction. Certainly Interco knew that if it terminated the entire Hirsch Plan, the ERISA statute would require exactly what the PBGC states is necessary for recognition of the spin-off termination.
It is this Court's opinion that the PBGC's refusal to recognize Interco's spin-off transaction as a valid ERISA termination is a valid exercise of the agency's discretion. Accordingly, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.
NOTES
[1] There is some disagreement between the parties on the question of when the Idaho Plan was implemented. Defendant submitted a copy of the Idaho Plan which indicates that the Idaho Plan was actually signed on February 28, 1985, but made effective on March 1, 1984. Plaintiff does not dispute the validity of defendant's exhibit. In view of this Court's resolution of the cross motions however, it is not necessary to reach or decide this question.
[2] Interco's transaction in this case is known as a spin-off:

In a typical spinoff transaction, an employer splits an overfunded defined benefit plan into two spunoff defined benefit plans, one for active employees and one covering retired employees. The employer allocates to the active employees' plan assets equal to the present value of the active employees' benefits, in accordance with section 414(1) of the Code. The employer then allocates all other plan assets, including the excess assets, to the retired employees' plan, leaving it overfunded. Upon termination of the retired employees' plan the excess assets revert to the employer.
Ronald Pearlman, Deputy Assistant Treasury Secretary for Tax Policy, 12 PENS.REP. 484.