**Robert J. CARMAN, Plaintiff,**

v.

**CITY OF EDEN PRAIRIE, Eden Prairie Director of Public Safety, Jack Hacking, James L. Matson, Fairview Community Hospitals, a Minnesota non-profit corporation, Fairview Receiving Center, Defendants.**

**Civ. No. 4–85–105.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 27, 1985.

Gordon G. Mohr, Bloomington, Minn., for plaintiff.

David D. Alsop, Gislason, Dosland, Hunter & Malecki, Minnetonka, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Robert J. Carman brought this action against defendants City of Eden Prairie, Eden Prairie Director of Public Safety Jack Hacking, James L. Matson, and Fairview Community Hospitals, a Minnesota nonprofit corporation d/b/a Fairview Receiving Center (Fairview). Plaintiff alleges that defendants violated his right to due process and equal protection. He also alleges negligence and false imprisonment, and seeks a declaratory judgment that *Minn.Stat.* §§ 253A.04 and 253B.05 are unconstitutional in part, as well as injunctive relief and compensatory damages. Jurisdiction is alleged under 42 U.S.C. §§ 1983, 1988, the Fifth and Fourteenth Amendments to the Constitution, and pendent jurisdiction. The matter is now before the court upon defendant Fairview's motion to dismiss or for summary judgment.

*Background*

The facts pertinent to this motion are essentially undisputed and are as follows. On May 31, 1984, plaintiff was arrested in the City of Eden Prairie and charged with driving while under the influence of alcohol in violation of *Minn.Stat.* § 169.121. After his arrest by Eden Prairie police officer James L. Matson, plaintiff was taken to the Eden Prairie Police Station. Upon his arrival at the station, plaintiff contacted his attorney who offered to come to the station to take responsibility for plaintiff, but his offer was refused by the Eden Prairie Police. Upon the advice of his attorney, plaintiff refused further testing for alcohol.

The police officers then transported plaintiff to the Fairview Receiving Center, a state licensed detoxification center operated by defendant Fairview. Upon arrival, the police officer executed an Application for Emergency Care or Treatment, pursuant to *Minn.Stat.* § 253B.05, subd. 2. The application stated that the officer had taken the plaintiff into custody believing him to be an intoxicated person whose function-

ing was substantially impaired because of alcohol. The application further stated that plaintiff was driving while intoxicated and had a strong alcohol odor and slurred speech. Ex. A. to aff. of Gail Kvasse. It described plaintiff as "obviously drunk." *Id.*

Fairview states that it admitted plaintiff for detoxification and assessment pursuant to *Minn.Stat.* § 253B.05, subd. 2, and its policies and procedures. It notes that he voluntarily signed a Request for Detoxification and Related Care and Treatment. Additionally, Fairview asserts that plaintiff was given a preliminary examination and evaluation by its staff which indicated that he was intoxicated. *See* ex. E to aff. of Gail Kvasse. Plaintiff asserts, by contrast, that no independent examination was conducted by Fairview to determine if emergency care and treatment were required. He also asserts that he was capable of caring for himself and did not need emergency care. Plaintiff was then assigned to a room; he had the remainder of the evening free.

The next day, after breakfast and morning rounds, a more comprehensive health and social history was taken, and plaintiff attended a film regarding chemical dependency. After lunch, plaintiff received individual counseling. He also filled out a "Mortimer-Filkins Questionnaire and Interview," a commonly used alcohol abuse/dependency assessment tool. A Fairview counselor diagnosed plaintiff as borderline dependent and recommended to him that he seek out-patient treatment following his discharge, which was at 1:30 p.m., Friday, June 1, 1984.

Plaintiff claims that he was transported to and held at Fairview against his will in violation of his constitutional rights. He notes that despite being completely sober by the next morning, he was prevented from going to work. Plaintiff filed the instant action on January 18, 1985, and Fairview subsequently filed this motion.

*Discussion*

Because the parties have submitted, and the court has referred to, matters outside the pleadings, this motion will be treated as one for summary judgment. *See* Fed.R. Civ.P. 12(b)(6); *Inland Container Corp. v. Continental Ins. Co.,* 726 F.2d 400, 401 (8th Cir.1984). In passing upon a motion for summary judgment, the court is required to view the facts in a light most favorable to the nonmoving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983); *Ralph's Distributing Co. v. AMF, Inc.,* 667 F.2d 670 (8th Cir.1981). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076 (8th Cir.1980).

Fairview contends that its reliance on a state statutory scheme entitles it to dismissal as it is protected by the qualified immunity of *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiff claims, by contrast, that Fairview's actions not only violated the relevant Minnesota statutes, but also violated clearly established constitutional rights.

 Qualified immunity is an affirmative defense which shields public officials performing discretionary functions from civil damages if their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity may be extended to private parties under certain circumstances. *Buller v. Buechler,* 706 F.2d 844 (8th Cir.1983).

 *Buller* concerned a claim that the private parties who had invoked South Dakota's unconstitutional garnishment statute against the plaintiff had violated his due process rights. The Court of Appeals, in determining that such private individuals may assert a qualified immunity defense, stated:

There is a strong public interest in permitting private individuals to rely on presumptively valid state laws and in shielding those citizens from monetary damages where they resort to a legal process which they neither know, nor reasonably should know, is invalid. Moreover, it would be anomalous to hold that private individuals are state actors within the meaning of § 1983 because they invoked a state garnishment statute and the aid of state officers; but deny those private individuals the qualified immunity possessed by the state officials with whom they dealt because they technically are not state employees. 706 F.2d at 851.

The same public interest policies discussed in *Buller* persuade the court that Fairview should be entitled to raise the qualified immunity defense in this situation.

Plaintiff argues nonetheless that under *Owen v. City of Independence, Mo.*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), Fairview is not entitled to a qualified immunity defense because it is "a policy making individual situated in the same position as a municipality." Plaintiff's Memorandum at p. 13. One of the central rationales articulated by the *Owen* court, however, is that holding municipalities strictly liable for § 1983 damages would equitably spread the loss among the public for constitutional violations caused by executing public policies. *Owen*, 445 U.S. at 657, 100 S.Ct. at 1418. This rationale is inapplicable when a private entity like Fairview is involved. Moreover, to deny a private party like Fairview good faith immunity would be unjust when it is required by state statute to exercise discretion. The failure to provide immunity might also deter such organizations from providing necessary services to the public. *See Owen v. City of Independence, Mo.*, 445 U.S. 622, 654, 100 S.Ct. 1398, 1417, 63 L.Ed.2d 673 (1980). The court finds, therefore, that Fairview may assert a qualified immunity defense.

Plaintiff contends that Fairview's interpretation of *Minn.Stat.* § 253B.05 and its policies are contrary to clearly established constitutional rights, as well as to the language of the statute itself. *Minn.Stat.* § 253B.05 provides in pertinent part:

(a) A peace or health officer may take a person into custody and transport him to a licensed physician or treatment facility if the officer has reason to believe that the person is mentally ill or mentally retarded and in imminent danger of injuring himself or others if not immediately restrained. A peace or health officer ... may take the person who is believed to be chemically dependent or is intoxicated in public into custody and transport him to a treatment facility. If the person is intoxicated in public or is believed to be chemically dependent and is not endangering himself or any person and property, the peace or health officer may transport the person to his home. Application for admission of the person to a treatment facility shall be made by the peace or health officer....

(b) A person may be admitted to a treatment facility for emergency care and treatment under this subdivision with the consent of the head of the facility under the following circumstances: ... or, a written statement is made by the institution program director or his designee on duty at the facility that after preliminary examination the person has symptoms of chemical dependency and appears to be in imminent danger of harming himself or others or is intoxicated in public.

Subdivision 3 of § 253B.05 provides that any person held pursuant to the section may only be held up to 72 hours unless and until a petition for commitment is brought to the county probate court. Finally, § 253B.06, subd. 3, provides that the treatment facility which accepts persons under § 253B.05 must arrange to have every patient examined by a physician within 48 hours of their admission. It also provides that if such an examination is not performed within the requisite time period the patient must be discharged.

The court notes that the instant claim is perhaps the first to be brought attacking the constitutionality of the obligatory hold

provisions of *Minn.Stat.* § 253B.05. No Minnesota decision has been found which rules on the statute's facial constitutional validity. Moreover, at the hearing, counsel for plaintiff conceded that the statute was constitutional on its face. Fairview had little reason, therefore, to suspect that acting pursuant to the statute would violate plaintiff's rights.

Plaintiff contends, however, that Fairview's application of the statute violated the constitutional mandate that a person involuntarily confined must pose a danger either to the public or himself under *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). These cases are distinguishable, however, as both dealt with a situation where a patient was judicially committed for an indefinite length of time for mental health reasons. No authority which plaintiff cites relates specifically to the situation where a person is held in a treatment center for public intoxication pursuant to a statute which limits the maximum hold to 72 hours or to 48 hours if an examination by a physician is not performed. In addition, *Minn.Stat.* § 253B.05, subd. 2 is ambiguous as to whether a finding of dangerousness is required. Thus, Fairview's interpretation that *Minn.Stat.* § 253B.05 requires only that a person be "intoxicated in public" to be validly admitted to a treatment facility under the statute does not, as a matter of law, violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).

Nor was Fairview outside the scope of the statute in any other way. Plaintiff argues that Fairview violated *Minn.Stat.* § 253B.05, subd. 2(b) by failing to conduct an independent examination. The record shows, however, that a designee of the program director made a preliminary examination and concluded that plaintiff was intoxicated in public. *See* ex. E to aff. of Gail Kvasse. At the completion of the assessment process, 18 hours after admission, Fairview determined that there was no medically necessary reason to hold plaintiff and he was released, well in advance of the 48 hour assessment period provided by § 253B.05, subd. 3. Fairview's actions were therefore within the scope of the statute.

In sum, Fairview reasonably applied a presumptively valid state statute. Fairview is thus entitled to qualified immunity because its conduct did not violate any of plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the motion of Fairview Community Hospitals d/b/a Fairview Receiving Center for summary judgment is granted, and plaintiff's claims against Fairview Community Hospitals are dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.