647 F.Supp. 94 (1986)
Joseph E. TILLMAN and Reba M. Tillman, Plaintiffs,
v.
W.T.S. FARM LINES, INC. and International Harvester Credit Corporation, n/k/a Navistar Financial Corporation, Defendants.
No. 85-1008C(6).
United States District Court, E.D. Missouri, E.D.
November 10, 1986.
William M. Brown, Bridgeton, Mo., for plaintiffs.
Gerard F. Hempstead, Mark W. Weisman, Suelthaus, Kaplan, Cunningham, Yates, Fitzsimmons & Wright, St. Louis, Mo., J.D. Rohrer, Woodward & Rohrer, Steelville, Mo., for defendants.

*95 MEMORANDUM
GUNN, District Judge.
This case involves the repossession of a tractor trailer truck by the assignee of a retail installment contract after default in payment by the purchaser. Jurisdiction of this Court is founded on 28 U.S.C. § 1332.
In June 1982 plaintiffs Joseph E. and Reba M. Tillman entered into a retail installment contract with Rolla Equipment Corporation for the purchase of a 1981 International Tractor. The contract was secured by a chattel mortgage on the truck. Rolla Equipment subsequently assigned its rights under the contract and chattel mortgage to defendant International Harvester Credit Corporation, n/k/a Navistar (Navistar). Under the retail installment contract plaintiffs were to pay a balance after downpayment of $47,000 and service charge of $19,270.24 in 48 monthly installments of $1,380.62 commencing July 20, 1982. Plaintiffs have been in default on the retail installment contract since November 1982.[1]
In November 1982 plaintiff Joseph Tillman leased the tractor to defendant W.T.S. Farm Lines, Inc. The lease, executed in Salinas, California on behalf of plaintiffs and signed by their driver, Randy Morris, provided that for a term of one year W.T.S. was to have "exclusive possession, control, and use of the truck."
W.T.S. operated the truck through April 1983. In March 1983 W.T.S., aware that Navistar was seeking to repossess the truck, contacted Navistar and arranged to deliver the truck to a place of its choice in exchange for continued use of the truck for thirty days. This arrangement apparently saved Navistar the cost of repossession while permitting W.T.S. to recoup some of its losses on its contract with the Tillmans. On April 22, 1983 W.T.S. delivered the truck to Navistar in Fenton, Missouri.
In their complaint plaintiffs alleged that W.T.S.'s use of the truck from January through April constituted an unauthorized conversion entitling plaintiffs to damages both for deprivation of the use of the truck and for decline in value of the vehicle due to wear. Plaintiffs further alleged that the agreement worked out for delivery of the truck by W.T.S. to Navistar constituted a conspiracy to deprive plaintiffs of the use of the truck as a source of income. This alleged conspiracy operated to frustrate plaintiffs in their efforts to make payments on the retail installment contract and led ultimately to plaintiffs' loss of the truck.
W.T.S. and Navistar filed counterclaims in the action, W.T.S. seeking reimbursement under the lease for expenses incurred in operating the truck in the January-April period and Navistar seeking to recover the deficiency on the installment contract remaining after the forced sale of the truck on January 9, 1984.
W.T.S. and Navistar filed separate motions for summary judgment on plaintiffs' complaint and on each of their counterclaims. W.T.S. subsequently dismissed its claim against plaintiffs. Because the Court concludes that plaintiffs have failed to meet their burden of production under Rule 56(e), Fed.R.Civ.Pro. and hence have failed to demonstrate to the Court that genuine issues of material fact remain in the case requiring resolution at trial, the Court grants summary judgment in favor of defendants. The uncontroverted evidence of defendants establishes that W.T.S. had lawful possession of the truck from January-April 1983 and operated it in accordance with its legal rights under the lease. Furthermore, Navistar had an absolute right to repossess the truck at any time upon notice of default in payment by plaintiffs under the Retail Installment Contract. Navistar was not obligated to repossess the truck at a particular time, and the arrangement for delivery by W.T.S. was reasonable under the circumstances. The *96 uncontroverted evidence establishes the deficiency on the contract as $17,623.45 after application of the proceeds of the sale to the outstanding debt.
In ruling on a motion for summary judgment the Court must view the facts alleged and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. The Court should grant the motion only if it is persuaded "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ. Pro. The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). However, under Rule 56(e), a party opposing a motion for summary judgment may not rest upon the allegations of his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.Pro. In the instant case plaintiffs have utterly failed to meet this burden of production.
In support of its motion for summary judgment W.T.S. filed with the Court excerpts of the depositions of Joseph Tillman and Jerry Wheeler, an agent of W.T.S., in which both men attest to the execution at the Salinas offices of W.T.S. in late 1982 of lease documents pertaining to the 1981 International Tractor. Jerry Wheeler attests that he worked from these documents when he drafted the January 1983 lease signed by Randy Morris. Wheeler further testifies to the common practice in interstate trucking of accepting the signature of a driver for the out-of-state owner of a truck on a prenegotiated lease agreement. Plaintiffs offer no evidence to counter this testimony. In their memorandum in opposition to the motion of W.T.S. plaintiffs deny that Morris had authority to sign the lease; however, plaintiffs failed to submit sworn affidavits to this effect, and the deposition testimony of Joseph Tillman tends to support the position of W.T.S.
Plaintiffs have failed, therefore, to create a genuine factual issue concerning the validity of the lease. The lease by its terms grants to W.T.S. for a one-year term "exclusive possession, control and use" of the 1982 International Tractor. Since defendant W.T.S. was in rightful possession of the tractor between January and April 1983, it cannot be liable for damages in conversion. See Nika Corp. v. City of Kansas City, Missouri, 582 F.Supp. 343, 354 (W.D.Mo.1983) (conversion defined as "a distinct act of dominion wrongfully exerted over the personal property of another in denial of or inconsistent with the latter's right therein"), quoting Fireman's Fund Ins. Co. v. Trippe, 402 S.W.2d 577, 581 (Mo.App.1966).
The uncontroverted evidence submitted by Navistar likewise supports its motions for summary judgment both on plaintiffs' complaint and on Navistar's counterclaim. The Retail Installment Contract signed by plaintiffs by its terms extends to the secured creditor on default by the debtor an absolute right to possession of the collateral. This contract right is codified in the Revised Statute of Missouri.
Section 400.9-503, RSMo (1978) in significant part provides:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action....
The Missouri statutory law governing secured transactions further provides for the disposition of collateral once repossessed. Section 400.9-504 RSMo (1978) reads:
(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.... The proceeds of disposition shall be applied in the order following to
(a) the reasonable expenses of retaking, holding, preparation for sale, selling the like and, to the extent provided *97 for in the agreement and not prohibited by law, the reasonable attorneys fees and legal expenses incurred by secured party
(b) the satisfaction of indebtedness secured by the security interest under which the disposition is made....
(2) The security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency....
(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts....
In support of its motion, Navistar submitted to the Court excerpts from the deposition of Robert Lantis, an agent of International Harvester, refuting plaintiffs' claim that Navistar knew prior to March 1983 of the location of the truck and colluded with W.T.S. to deprive plaintiffs of their rightful possession. Navistar also submitted the affidavit of Mike Spurgeon, District Credit Supervisor of Navistar, in which Mr. Spurgeon sets forth the procedures followed by Navistar in registering and notifying plaintiffs of their default, repossessing the truck and arranging for its sale. The procedures fully comport with those sanctioned by statute.
Plaintiffs submitted no materials to counter the evidence presented by Navistar. This Court, therefore, grants summary judgment in favor of Navistar on plaintiffs' complaint and on Navistar's counterclaim in accordance with Rule 56(e) Fed.R.Civ. Pro.

ORDER
Pursuant to the memorandum filed herein on this date,
IT IS HEREBY ORDERED that the motion of defendant W.T.S. Farm Lines, Inc. for summary judgment on plaintiff's complaint be and it is granted.
IT IS FURTHER ORDERED that the motion of defendant International Harvester Credit Corporation for summary judgment on plaintiff's complaint be and it is granted.
IT IS FURTHER ORDERED that the motion of defendant International Harvester Credit Corporation for summary judgment on its counterclaim against plaintiffs be and it is granted. Defendant International Harvester Credit Corporation, n/k/a Navistar Financial Corporation shall recover Seventeen Thousand Six Hundred Twenty-three and 45/100 Dollars ($17,623.45) plus attorneys' fees of Six Thousand Dollars ($6,000) for a total of Twenty-three Thousand Six Hundred Twenty-three and 45/100 Dollars ($23,623.45). Plaintiffs shall pay the costs of this action.
NOTES
[1] Plaintiffs apparently made installment payments for November 1982, December 1982 and January 1983 by a single check tendered to Navistar in January 1983. The check did not clear and was returned in February 1983 for insufficient funds. There is no indication in the record of any further payments by plaintiffs.