James A. TOOLEY, Plaintiff,

v.

Julian BOYD, David Kovac, and Betty Uda, Defendants.

No. 4:95CV188SNL.

United States District Court,
E.D. Missouri,
Eastern Division.

Aug. 23, 1996.

James A. Tooley, pro se.

## MEMORANDUM

LIMBAUGH, District Judge.

*Pro se* prisoner plaintiff[1] brings this § 1983 action alleging, that as a result of his involvement in a jail race riot, he was more severely punished than other culpable black inmates. He further alleges that he was denied assignment to the kitchen because of his race (white). Finally, he alleges that he was denied medical treatment for a toe that was injured during the riot. This matter is before the Court on the defendants' motion for summary judgment (# 43). Plaintiff has filed a response.

██ Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

██ Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information be-

---

1. The pleadings fail to establish whether plaintiff Tooley was a pretrial detainee or not at the time of the alleged incident and the filing of this complaint. After reviewing the entire court file, it is this Court's opinion that plaintiff was not a pretrial detainee at the time of the incident. Even if the Court's determination is in error, the Court's ultimate findings and ruling on the instant motion would remain the same.

fore the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

Plaintiff, during the relevant time-period, was incarcerated at the St. Louis Municipal Jail facility. On September 12, 1994, at approximately 3:40 p.m., on the third floor—tier three (3), a physical fight broke out among several residents, black and white. Plaintiff was involved in this fight. Correc-tional officers responded to the disturbance and ordered the inmates to cease fighting and "to rack". Several inmates, including the plaintiff, failed to comply with the order. Ultimately the disturbance was quelched and the inmates who failed to comply with the correctional officers' orders were handcuffed, removed from the tier, and taken to the "bullpen" for processing. Defendants' Exhibit D.

After the disturbance, all of the inmates involved were seen by medical staff. Scratches were noted on plaintiff Tooley. He was offered medical treatment but refused it. Medical records show that plaintiff did not complain of any injury to his toe[2] when first examined by the medical staff (following the disturbance). Medical records further show no request by Tooley, at any time following the September 12, 1994 disturbance, for medical attention regarding an injury to his toe. Defendants' Exhibits A and B.

An internal investigation ensued. Several inmates, including the plaintiff, were interviewed as to the cause of the riot. The investigation revealed that the disturbance was the result of underlying racial tensions on the tier, and that the white inmates instigated the riot. Plaintiff was found to be one of the main instigators and participants in the riot. All of the inmates involved (black and white) were charged with contributing to the riot. The black inmates and one white inmate were allowed to return to tier 3–3; however, plaintiff and two other white inmates were segregated on a different floor while the investigation took place. Defendants' Exhibit D.

Although the facts surrounding plaintiff's claim regarding discrimination in work assignment are sketchy[3], it appears that plain-

---

**2.** In later pleadings, plaintiff broadens the scope of his alleged injury to include not only a swollen toe, but vague injuries involving his foot and knee.

**3.** The defendants' memorandum in support of their summary judgment motion is deficient in two respects: firstly, few factual details are provided regarding the circumstances giving.rise to the plaintiff's claims. What facts are documented are minimally sufficient, however, a more extensive briefing of the matter would have been helpful. Secondly, caselaw citations are improper. None of the citations contain a reference to the originating court; i.e. a district court citation must refer to the specific district court and an appellate decision must refer to the specific circuit. Furthermore, the absence of citations to current Eighth Circuit and Missouri district court caselaw is very surprising. This Court is not particularly interested in twenty (20) year old caselaw outside of this circuit and district in light of the plethora of current caselaw on prisoner

tiff's initial request for a work assignment in the kitchen was rejected due to the fact that his bond was too high. The jail facility has a policy of only having four (4) inmates with high bonds and/or murder charges to work in the kitchen at one time. Defendants' Exhibit C. When an opening occurred, plaintiff was given his kitchen work assignment. Defendants' Exhibit C.

■ Plaintiff does not allege any due process violations with regard to his segregation after the race riot. He simply alleges that he was racially discriminated against as regards his confinement to administrative segregation and his request for a kitchen work assignment. In order to establish a claim for an equal protection violation pursuant to the Fourteenth Amendment, plaintiff must show that he was accorded treatment invidiously dissimilar from that accorded to other inmates, with no rational basis existing for the difference in treatment. *Wishon v. Gammon,* 978 F.2d. 446, 450 (8th Cir.1992); *Flittie v. Solem,* 827 F.2d. 276 (8th Cir.1987). Plaintiff has failed to demonstrate in any way that he has been accorded treatment invidiously dissimilar from that accorded to other similarly situated inmates.

■ The evidence before this Court clearly shows that an internal investigation of the race riot concluded that the riot was the result of racial tensions between certain white inmates and black inmates on the tier. The investigation further concluded that the white inmates instigated the riot; and that plaintiff was one of the instigators and main participants in the riot. The evidence before this Court also shows that while plaintiff and two other white inmates believed to be the primary participants in the riot were segregated on the second floor; another white inmate and the black inmates were allowed to return to their cells on the third floor. It is clear that plaintiff was segregated due to his heightened involvement in the riot and as a means to maintain security and safety in the jail facility. Substantial deference must be given to prison officials in matters concerning prison management. *Hewitt v.*

*Helms,* 459 U.S. 460, 467–72, 103 S.Ct. 864, 869–72, 74 L.Ed.2d 675. Prison officials have the right to administratively segregate an inmate who has shown himself to be a safety risk to himself or others, or a risk to the security of the institution. *Hewitt v. Helms,* 459 U.S. at 473, 103 S.Ct. at 872; *Brown–El v. Delo,* 969 F.2d. 644, 649 (8th Cir.1992). Plaintiff fails to refute the evidence before this Court that he clearly was a primary participant in the race riot and therefore posed a safety and security risk. Defendants had a rational basis for the difference in treatment as to the parties involved in the race riot.

■ As for the kitchen work assignment, plaintiff has failed to offer any affirmative facts to dispute the evidence before the Court which shows that plaintiff was denied the work assignment initially because the maximum number of "high bond" inmates were already assigned to the kitchen. The Court also notes that plaintiff fails to offer any evidence disputing the fact that when an opening did occur, he was given his requested kitchen assignment. There is no evidence before this Court which demonstrates that plaintiff's race had anything to do with the initial decision to deny plaintiff's request for kitchen duty.

■ Finally, as to the plaintiff's claim of denial of medical care, plaintiff fails to set forth any acceptable affirmative evidence demonstrating a material issue of fact. Plaintiff claims that defendant Uda came to his cell, after the race riot, and he complained to her about a swollen toe and other injuries to his foot. He also claims that he made repeated requests for medical attention to his foot but was denied same. In support of this allegation, plaintiff filed the affidavit of Reggie Cunningham, another inmate. Mr. Cunningham claims to have "overheard" plaintiff's alleged conversation with defendant Uda, as well as "overhearing" plaintiff complaining about his toe and foot. This affidavit is inadequate under Rule 56 since the statements contained therein are

civil rights from the United States Supreme Court, the Eighth Circuit Court of Appeals, and

the Eastern District of Missouri.

hearsay and inadmissible. The only other piece of evidence submitted by the defendant is a note by plaintiff, allegedly written on September 24, 1994 and given to an unidentified nurse, asking if he was still on a list to see a doctor. There is no indication from where this note was obtained nor is there any evidence which corroborates plaintiff's allegation that the note was given to an unidentified nurse on September 26, 1994. Furthermore, the note makes absolutely no mention of any injury to plaintiff's toe, foot, or knee.

Plaintiff's Exhibit C is a copy of the incident report for the riot of September 12, 1994.[4] The report notes that plaintiff "complained of several injuries and requested medical attention". Plaintiff's medical file shows that he was examined on September 12, 1994 for injuries and that the only injuries were scratches and that he refused medical treatment. His medical and social services files show no further requests for medical attention, especially for his toe, foot or knee.

■■■■■ To succeed on a claim for inadequate medical treatment under 42 U.S.C. § 1983, a plaintiff must meet both the objective and subjective components of an Eighth Amendment violation. *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Aswegan v. Henry,* 49 F.3d. 461, 464 (8th Cir.1995). To do this, a plaintiff must demonstrate that the defendant(s) were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Sheldon v. C/O Pezley, et. al.,* 49 F.3d 1312, 1316 (8th Cir.1995); *Smith v. Jenkins,* 919 F.2d. 90, 93 (8th Cir.1990); *Taylor v. Turner,* 884 F.2d. 1088, 1089–90 (8th Cir.1989). A "serious medical need" is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d. 1176, 1187 (11th Cir.1994) quoting *Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H. 1977); *see also, Aswegan,* at 464; *Sheldon,* at 1316; *Johnson v. Busby,* 953 F.2d. 349, 351 (8th Cir.1991). "A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." *Boyd v. Knox,* 47 F.3d. 966, 968 (8th Cir.1995) quoting *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). A prison official's knowledge may be established circumstantially based on the fact that the seriousness of the medical needs is obvious, *Boyd v. Knox,* at 968 citing *Farmer v. Brennan,* 511 U.S. at ——, 114 S.Ct. at 1981; or by the fact that the condition is one that has been diagnosed by a physician as requiring treatment, *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d. 1176, 1187 (11th Cir.1994) quoting *Laaman v. Helgemoe,* 437 F.Supp. 269, 311 (D.N.H.1977). Assuming knowledge is demonstrated, deliberate indifference then may be shown by the prison official's attitude and conduct in response to the inmate's serious medical need. *Brewer v. Blackwell,* 836 F.Supp. 631, 641 (S.D.Iowa 1993) citing *Helling v. McKinney,* 509 U.S. 25, 29–33, 113 S.Ct. 2475, 2479–80, 125 L.Ed.2d 22.[5]

Plaintiff has failed to set forth sufficient affirmative evidence to demonstrate that a material issue of fact exists regarding the defendants' knowledge of plaintiff's alleged serious injury to his toe, foot, or knee and their deliberate indifference to his serious medical needs. He has failed to produce any admissible evidence demonstrating that any of the defendants knew of a serious injury to his toe, foot, or knee and failed to properly respond to such a serious medical need. Plaintiff's constitutional claim for denial of medical treatment fails.

---

4. The Court notes that the defendants have submitted an incident report as Exhibit E. However, the defendants' incident report exhibit is for inmate Dennis Wildhaber. This exhibit is irrelevant to the issue of denial of medical treatment for the plaintiff.

5. Even if plaintiff were actually a pretrial detainee at the time of the alleged denial of medical treatment, his claim would be analyzed under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment; however, his claim would still be subject to the deliberate indifference standard. *Davis v. Hall,* 992 F.2d. 151, 152–53 (8th Cir.1993).

Having found no genuine issues of material facts regarding any of the plaintiff's claims, the Court finds that the defendants are entitled to judgment as a matter of law.